1  Thomas P. Mazzucco - 139758
   Aaron K. McClellan – 197185
2  Bryan L. P. Saalfeld - 243331
   Nicholas C. Larson - 275870
3  MURPHY, PEARSON, BRADLEY & FEENEY
   88 Kearny Street, 10th Floor
4  San Francisco, CA 94108-5530
   Tel:    (415) 788-1900
5  Fax:   (415) 393-8087
   E-Mail      tmazzucco@mpbf.com
6              amcclellan@mpbf.com
               bsaalfeld@mpbf.com
7              nlarson@mpbf.com

8  Geoffrey Potter (to be admitted *pro hac vice*)
   Christos G. Yatrakis (to be admitted *pro hac vice*)
9  Jonah M. Knobler (to be admitted *pro hac vice*)
   PATTERSON BELKNAP WEBB & TYLER LLP
10 1133 Avenue of the Americas
   New York, NY 10036
11 Telephone:   (212) 336-2000
   Fax:         (212) 336-2222
12 E-Mail       gpotter@pbwt.com
               cyatrakis@pbwt.com
13             jknobler@pbwt.com

SEALED BY COURT ORDER

RECEIVED
2012 OCT 26  A 10: 28
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WHA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATION VENTURES, LLC and LIVING ESSENTIALS, LLC, | Case No. C 12 5523 |
| Plaintiffs, | |
| -against- | [PROPOSED] SEIZURE ORDER |
| PITTSBURG WHOLESALE GROCERS, INC., d/b/a PITCO FOODS; PACIFIC GROSERVICE, INC. d/b/a PITCO FOODS; ARISTOTLE PERICLES NAVAB; DAVID LUTTWAY; SANTA MONICA DISTRIBUTING, INC.; MANOUCHEHR HEIKALI, a.k.a. DAVID HEIKALI; AZIZ HEIKALI, a.k.a. ED HEIKALI; ELITE WHOLESALE, INC.; TONIC WHOLESALE, INC. d/b/a ACE WHOLESALE; KOAMEX GENERAL WHOLESALE, INC.; YOUNG H. KIM, a.k.a. YONG HWAM KIM; DAPAN USA CORP. d/b/a FRONTIER WHOLESALE; SUNG KEUN LEE; DAN-DEE COMPANY, INC.; FADI ATTIQ; KEVIN ATTIQ; and JOHN DOES 1-10, | **FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116** |
| Defendants. | |

GIVEN
COPIES MAILED TO SUBMITTING COUNSEL

[PROPOSED] SEIZURE ORDER

PLEASE TAKE NOTICE that upon the Complaint of Innovation Ventures, LLC and Living Essentials, Inc. (together, "Living Essentials" or "Plaintiffs"), the accompanying declarations and the exhibits annexed hereto, and the memorandum of law submitted in support of this Order, it is hereby:

ORDERED, any law enforcement officers having jurisdiction including without limitation the United States Marshal, or one or more of his deputies; the San Diego County Sheriff's Office; the Alameda County Sheriff's Office; the Oakland Police Department; the San Mateo County Sheriff's Office; the Brisbane Police Department; the Yolo County Sheriff's Office; the West Sacramento Police; the Santa Clara County Sheriff; the San Jose Police Department; the Los Angeles County Sheriff; the Santa Monica Police Department; the Los Angeles Police Department; the Ventura County Sheriff; the Ventura Police Department, and in all cases assisted by one or more attorneys, private investigators, or agents of Plaintiffs, are directed and permitted, at any time between the hours of 8:00 a.m. and 11:00 p.m., to search, seize, copy, and sequester at any time, but no later than seven days (7) from the date of this Order, the following items in the possession, custody, or control of the following Defendants (together, "Distributing Defendants"): Pittsburg Wholesale Grocers, Inc., d/b/a Pitco Foods, and Pacific Groservice Inc., d/b/a/ Pitco Foods, located at 567 Cinnabar Street, San Jose, California 95110; Santa Monica Distributing, Inc., located at 3180 W. Olympic Boulevard, Santa Monica, California 90404; Elite Wholesale, Inc., located at 12323 Sherman Way, North Hollywood, California 91605; Tonic Wholesale, Inc., d/b/a Ace Wholesale, located at 1675 South Alameda Street, Los Angeles, California 90021; Koamex General Wholesale, Inc., located at 18695 East San Jose Avenue, City of Industry, California 91748; Frontier Wholesale, located at 1725 Wood Place, Ventura, California 93003; Dan-Dee Company, located at 3511 Sweetwater Springs Boulevard, Spring Valley, California 91978; and any other residence or office, warehouse, truck, van, car, storage facility or other location in their possession, custody or control:

-2-

**[PROPOSED] SEIZURE ORDER**

(a) All counterfeit products bearing any of the 5-Hour ENERGY Marks (as defined below);

(b) All business records, invoices, correspondence, e-mails, bank records, cancelled checks, wire transfers, books of account, receipts, or other documentation relating or referring in any manner to the manufacture, promotion, publicity, advertising, receiving, acquisition, importation, return, shipment, purchase, sale, offer for sale, or distribution of any merchandise bearing the 5-Hour ENERGY Marks whether such information is stored in a written or computerized form, and all telephone and address directories such as a Rolodex;

(c) All documents constituting or concerning communications and transactions between or among any of the defendants in this action; and it is further

ORDERED, that Plaintiffs, on whose behalf the Court issues this Order, will account completely for all property seized pursuant to this Order and shall compile a written inventory of all such property and shall provide a copy to the law enforcement authority conducting the seizure, who shall include such a copy with his return to the Court; and it is further

ORDERED, that Plaintiffs' private investigators and attorneys are authorized under the supervision and with the assistance of law enforcement authority to take all necessary steps to secure and remove the property described in the preceding paragraphs and located at the addresses stated herein including but not limited to breaking open, searching, and entering the premises, or vehicle, or facility in the possession, custody, or control of the Distributing Defendants, and to inspect the contents of any rooms, closets, cabinets, safes, vehicles, containers, desks, electronic storage devices, computer drives, desktop computers, laptop computers or documents located on the premises or any storage rooms located within the same complex as the premises and that the Distributing Defendants and their employees shall provide all passwords or codes needed to inspect the contents of any rooms, closets, cabinets, safes, vehicles, containers, desks, electronic storage

**[Proposed] Seizure Order**

1 devices, computer drives, desktop computers, laptop computers, or documents located on the
2 premises or any storage rooms located within the same complex as the premises; and it is further

3 ORDERED, that Plaintiffs' attorneys may accompany the law enforcement officers to
4 determine whether an item is covered by the preceding paragraphs and the law enforcement officers
5 shall follow such attorneys' determination; and it is further

6 ORDERED, that during the seizure authorized herein, each person present who is a
7 defendant or employed or affiliated with a defendant, shall, upon request by a law enforcement
8 officer, provide a driver's license or other form of identification; and it is further

9 ORDERED, that Plaintiffs' attorneys may be accompanied by private investigators and/or
10 computer technicians to obtain copies of documents to be seized that are stored in computerized
11 form and Plaintiffs' attorneys may also bring with them still camera or video camera operators to
12 record the seizure; and it is further

13 ORDERED, that Plaintiffs' attorneys shall promptly inspect the items seized, and if any
14 items are found to be outside the scope of this Order, such items are to be returned within ten (10)
15 business days of the date the seizure is conducted pursuant to this Order; and it is further

16 ORDERED, that Plaintiffs shall be responsible to the law enforcement officers for all of their
17 fees and charges incurred in carrying out this Order and shall hold harmless law enforcement
18 authority and its employees for any and all claims, asserted in any court or tribunal, arising from any
19 acts, incidents, or occurrences in connection with the seizure and possession of the Defendant's
20 property, including any third-party claims; and it is further

21 ORDERED, that anyone interfering with the execution of this Order is subject to arrest by
22 law enforcement authority; and it is further

ORDERED, that Plaintiffs post an undertaking ~~within five (5) business days of the entry of this Order~~ *by Monday, October 29th* with the Clerk of the Court in the form of a bond, cash or check in the sum of $50,000 as security for the payment of such costs and damages as may be incurred or

-4-
[PROPOSED] SEIZURE ORDER

suffered by any party as a result of a wrongful seizure or wrongfully attempted seizure and such undertaking, if in the form of check or cash, shall be held in an interest-bearing account; and it is further

ORDERED, that the parties shall appear for a hearing before this Court to confirm this Seizure Order on **November 7**, 2012 at **3:00** a.m./**p.m.**, such date not being sooner than ten (10) days from the date of this Order and not later than fifteen (15) days from the date of this Order, absent good cause or consent of all parties; and it is further

ORDERED, that any Defendant intending to oppose confirmation of this Order shall file opposition papers with this Court and personally serve upon Plaintiffs' counsel, Patterson Belknap Webb & Tyler LLP, at their offices at 1133 Avenue of the Americas, New York, New York 10036, on or before **November 12**, 2012, and reply papers shall be filed and served on or before **November 19**, 2012; and it is further

ORDERED, that pending the hearing to confirm the seizure authorized herein, the Clerk of this Court is to keep and maintain under seal all papers filed in this action, including this Seizure Order and the Complaint, and that public scrutiny of such papers shall not be permitted, subject to Defendants' right to access such papers upon presenting the Clerk of this Court with proper identification after the seizure authorized herein has been carried out; and it is further

ORDERED, that Defendants personally serve upon Plaintiffs' counsel, Patterson Belknap Webb & Tyler LLP, at their offices at 1133 Avenue of the Americas, New York, New York 10036, five (5) days before the confirmation hearing scheduled herein, copies, to the extent that the originals were not seized and sequestered, of all business records, inventory records, invoices, e-mails, bank records, wire transfers, correspondence, books of account, letters of credit, receipts, or other documentation relating or referring in any manner to the manufacture, promotion, publicity, advertising, receiving, acquisition, importation, shipment, purchase, sale, offer for sale, or distribution of any merchandise bearing the 5-Hour ENERGY Marks, whether such information is

-5-

**[PROPOSED] SEIZURE ORDER**

stored in a written or computerized form, that are in the possession, custody, or control of Defendant; and it is further

ORDERED, that service of the Seizure Order shall be made at the time of the seizure by delivering true copies thereof to any person of suitable age found at the premises and that such service be deemed sufficient service.

The Court has granted the foregoing Seizure Order without prior written or oral notice to the Distributing Defendants for the reasons set forth below:

The entry of any Order other than a Seizure Order without notice will not serve to adequately achieve the objectives underlying the Trademark Counterfeiting Act of 1984;

(d) Plaintiffs have not publicized their proposed Seizure Order;

(e) Plaintiffs have provided the United States Attorney for the Northern District of California with notice of their application for a seizure Order pursuant to 15 U.S.C. § 1116(d)(2);

(f) Plaintiffs have provided the Court with substantial evidence that Defendants have used a counterfeit mark in connection with the sale, offering for sale, or distribution of counterfeit goods;

(g) Plaintiffs will incur immediate and irreparable injury if this Court declines to grant a Seizure Order without notice;

(h) The matters subject to said Seizure Order likely will be located at the locations to be searched;

(i) The harm to Plaintiffs should this Court decide not to grant Plaintiffs' motion for a Seizure Order outweighs any harm which the Distributing Defendants may incur in the event this Court grants Plaintiffs' motion for a seizure Order; and

(j) The Distributing Defendants, or persons acting in concert with them, would likely destroy, move, hide, or otherwise make inaccessible to the Court the matters which are subject to the proposed seizure Order if Plaintiffs are required to proceed on notice.

-6-

**[PROPOSED] SEIZURE ORDER**

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court issues the foregoing Seizure Order based upon the findings of fact and conclusions of law set forth below.

## Findings of Fact

For use with 5-Hour ENERGY®, Living Essentials is the owner of a well-established family of famous trademarks including, among others, the following trademarks that appear on the packaging for genuine 5-Hour ENERGY® (collectively referred to herein as the "5-Hour ENERGY Marks"):

(1) Plaintiffs' "5 HOUR ENERGY" trademark was registered on the Supplemental Register of the United States Patent and Trademark Office on September 27, 2005 as U.S. Registration No. 3,003,077;

(2) Plaintiffs' "5-HOUR ENERGY" trademark as registered on the Principal Register of the United States Patent and Trademark Office on August 2, 2011 as U.S. Registration No. 4,004,225;

(3) Plaintiffs' **5-hour ENERGY** trademark was registered on the Principal Register of the United States Patent and Trademark Office on February 28, 2012 as U.S. Registration No. 4,104,670;

(4) Plaintiffs' trademark, which includes the wording "5-hour ENERGY" in black outlined in yellow, below which are the words "EXTRA STRENGTH" in yellow, along with a person in black silhouette, outlined in yellow, shown in an athletic pose adjacent to an

-7-

**[PROPOSED] SEIZURE ORDER**

uneven landscape, with the sky depicted in transitioning colors from black to red as the sky meets the landscape, was registered on the Principal Register of the United States Patent and Trademark Office on March 27, 2012 as U.S. Registration No. 4,116,951;

(5) Plaintiffs' trademark, commonly referred to as "Running Man" was registered on the Principal Register of the United States Patent and Trademark Office on October 20, 2009 as U.S. Registration No. 3,698,044; and

(6) Plaintiffs' trademark, which includes the wording "5-hour ENERGY" in black outlined in yellow along with a person in black silhouette, outlined in yellow, shown in an athletic pose adjacent to an uneven landscape, with the sky depicted in transitioning colors from red to yellow as the sky meets the landscape, was registered on the Principal Register of the United States Patent and Trademark Office on September 17, 2010 as U.S. Registration No. 4.120,360.

(Decl. of Matthew S. Dolmage, dated Oct. 25, 2012 ("Dolmage Decl.") ¶ 10.)

(k) The 5-Hour ENERGY Marks symbolize business goodwill of Living Essentials and are invaluable assets to Living Essentials. (Dolmage Decl. ¶ 18.)

(l) In September 2012, a salesman sent Living Essentials bottles of 5-Hour ENERGY® that he suspected were diverted. (*Id.* ¶ 4.) After closely inspecting the bottles, Living Essentials

-8-

**[PROPOSED] SEIZURE ORDER**

determined – based on subtle but distinct differences in packaging between the authentic bottles and the purported counterfeits – that the bottles were not diverted but rather were counterfeits. (*Id.* ¶ 5.) The most striking difference between the authentic and counterfeit bottles was that the authentic bottle caps featured a "pimple" mark from the mold, whereas the counterfeit caps did not have this "pimple" mark. (*Id.*)

(m)  Living Essentials immediately retained counsel, which conducted an extensive, nationwide investigation to uncover those responsible for the counterfeits. (*Id.* ¶ 3.)

(n)  A forensic chemist retained by Living Essentials determined that there were significant differences between the genuine and the counterfeit product. (Decl. of Erich Speckin, dated Oct. 24, 2012 ("Speckin Decl.") ¶ 13.) For example, while authentic 5-Hour ENERGY® contains 7.8 parts per million of vitamin $B_{12}$, the counterfeit product contains no detectable amount of that vitamin. (*Id.* ¶ 22.) In addition, the coloring of the counterfeit product is significantly different from the coloring of the authentic product. (*Id.* ¶¶ 17-18.) Significantly, in contrast to 5-Hour ENERGY® which has the same pink color regardless of flavor, the counterfeits have different colors depending on the variety. For example, the counterfeit Orange variety had a pale orange color whereas the counterfeit Berry was a pale pink. (*Id.* ¶ 18.)

(o)  As a result of the inferior quality of the counterfeit product, Living Essentials has received many complaints from customers who purchased product that smelled and tasted different from the authentic product. (Dolmage Decl. ¶ 7.)

(p)  Investigators dispatched by counsel for Living Essentials have determined that counterfeit product has been distributed to retail outlets by each of the Distributing Defendants named in this Order. (Decl. of Bruce Gerstman, dated Oct. 25, 2012 ("Gerstman Decl.") ¶¶ 2-4, 6, 8 (Pittsburg Wholesale Grocers, Inc., d/b/a Pitco Foods, and Pacific Groservice Inc., d/b/a/ Pitco Foods); Decl. of Josh Lichtman, dated Oct. 25, 2012 ("Lichtman Decl.") ¶¶ 2-6 (Tonic Wholesale, Inc., d/b/a Ace Wholesale); *id.* ¶¶ 7-8, 10, 15 (Elite Wholesale, Inc.); *id.* ¶ 9 (Santa Monica

-9-
**[PROPOSED] SEIZURE ORDER**

Distributing, Inc.); *id.* ¶¶ 12-13 (Koamex General Wholesale, Inc.); *id.* ¶¶ 14-16 (Frontier Wholesale); *id.* ¶¶ 17-25 (Dan-Dee Company).)

(q) Plaintiffs have notified the United States Attorney for the Northern District of California of their request for a Seizure Order. (Decl. of Geoffrey Potter, dated Oct. 25, 2012 ("Potter Decl.") ¶ 6.)

## Conclusions of Law

Faced with "an 'epidemic' of commercial counterfeiting," Congress enacted the Counterfeiting Act to provide a meaningful remedy to victims of counterfeit trafficking. *See* S. Rep. No. 98-526, 98th Cong., 2d Sess. 5 (1984), reprinted in 1984 U.S.C.C.A.N. 3627, 3631 (*citing Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 528 (2d Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984)). The Counterfeiting Act permits a court to grant an *ex parte* order of seizure in "[c]ivil actions arising out of [the] use of counterfeit marks," including "records documenting the manufacture, sale or receipt" of the counterfeit goods. 15 U.S.C. § 1116(d)(1)(A). *See Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 558 (9th Cir. 1992) (noting that lower court properly granted *ex parte* seizure order under section 1116, which "explicitly authoriz[es] the prejudgment seizure of counterfeit goods" and related documentary evidence); *Tanning Research Labs., Inc. v. Worldwide Imp. & Exp. Corp.*, 803 F. Supp. at 608 (*ex parte* order of seizure granted pursuant to Section 1116). The purpose of allowing plaintiffs to proceed *ex parte* against known counterfeiters is "[t]o provide trademark owners with an effective means of combatting this lawless behavior." 1984 U.S.C.C.A.N. at 3628. As Congress explained in the Senate Report accompanying this bill, "[t]he reason for this provision is that many counterfeiters, once given notice that their fraudulent operations have been discovered, will immediately dispose of the counterfeit goods and make it impossible for the trademark owner ever to bring them to justice." *Id.* at 3629.

-10-

[PROPOSED] SEIZURE ORDER

A plaintiff must satisfy seven statutory criteria before a court can grant an *ex parte* order of seizure under Section 1116. *See* 15 U.S.C. § 1116(d)(4)(B). As demonstrated below and in the declarations accompanying Plaintiffs' application, Plaintiffs have met each requirement.

1. "An order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title"

As recognized by Congress in enacting the Counterfeiting Act, counterfeiters are more likely than not to dispose of or conceal the counterfeit goods when confronted with a trademark action. 130 Cong. Rec. H 12076, 12080 ("[M]any of those who traffic in counterfeits have become skilled at destroying or concealing counterfeit merchandise when a day in court is on the horizon."). It is this possibility, ever-present in any counterfeiting case, that justifies immediate and *ex parte* action to obtain the evidence needed to prove a violation of the Trademark Act.

[PROPOSED] SEIZURE ORDER

There is clear evidence that the Distributing Defendants sold counterfeit 5-hour ENERGY® featuring counterfeits of Plaintiffs' valid, protectable trademarks. The Distributing Defendants are "using" 5-Hour ENERGY Marks by selling counterfeit 5-hour ENERGY® products in counterfeit packages that are nearly identical to authentic 5-hour ENERGY® bottles and packaging. The Distributing Defendants either knew, or should have known, that their conduct was unlawful. Through an extensive, nationwide investigation, Plaintiffs have purchased from the Distributing Defendants (and/or from entities that purchase 5-Hour ENERGY® products through the Distributing Defendants) product bearing counterfeit marks, as that term is defined in 15 U.S.C. § 1116(d)(1)(B). Because the Distributing Defendants' conduct can result in criminal prosecution, there is a very real risk that the Distributing Defendants will destroy or conceal the evidence of their misconduct – including the purchase and sale documentation and the inventory itself – if put on notice of this action and given the ordinary amount of time to respond to a conventional discovery request.

2. <u>"The applicant has not publicized the requested seizure"</u>

Plaintiffs have not publicized the requested seizure. (Potter Decl. ¶ 6). Furthermore, as set forth in the accompanying proposed order, all papers in support of Plaintiffs' application for *ex parte* relief are to be kept under seal by the Clerk of this Court pending the effectuation of the seizure order.

3. <u>"The applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services"</u>

As demonstrated above, Plaintiffs have submitted evidence that the Distributing Defendants are distributing, selling and offering for sale counterfeit 5-Hour ENERGY®. Given this indisputable evidence, Plaintiffs have met their burden of demonstrating the likelihood of success on

[PROPOSED] SEIZURE ORDER

the merits of their counterfeiting claim and need not advance any additional proof to satisfy this statutory criterion.

    4.  "An immediate and irreparable injury
       <u>will occur if such seizure is not ordered</u>"

The counterfeits are currently being distributed and sold at retail stores across the country. Each and every sale of 5-hour ENERGY® further erodes the good will and reputation associated with this product. Plaintiffs will thus continue to suffer irreparable harm – and consumers will remain at risk of buying adulterated and ineffective product – until the Court puts a stop to the continued sale and distribution of these counterfeits. Seizing the product and the paper trail currently in the Distributing Defendants' possession is a necessary first step, both to prevent these defendants from continuing to sell it and to identify others who may be involved. Until that happens, plaintiffs are being, and will continue to be, irreparably harmed.

    5.  "The matter to be seized will be located
       <u>at the place identified in the application</u>"

The following addresses were identified by investigators working at the direction of counsel for Living Essentials as addresses currently used by the Distributing Defendants.

<u>Pittsburg Wholesale Grocers, Inc., d/b/a Pitco Foods</u>

Based on information obtained by Plaintiffs' investigators, Pacific Groservice Inc., d/b/a/ Pitco Foods, is currently operating out of 567 Cinnabar Street, San Jose, California 95110. (Gerstman Decl. ¶ 8.)

<u>Pacific Groservice Inc., d/b/a/ Pitco Foods</u>

Based on information obtained by Plaintiffs' investigators, Pacific Groservice Inc., d/b/a/ Pitco Foods, is currently operating out of 567 Cinnabar Street, San Jose, California 95110. (Gerstman Decl. ¶ 8.)

**[PROPOSED] SEIZURE ORDER**

Santa Monica Distributing, Inc.

Based on information obtained by Plaintiffs' investigators, Santa Monica Distributing, Inc. is currently operating out of 3180 W. Olympic Boulevard, Santa Monica, California 90404. (Lichtman Decl. ¶ 12.)

Elite Wholesale, Inc.

Based on information obtained by Plaintiffs' investigators, Elite Wholesale, Inc. is currently operating out of 12323 Sherman Way, North Hollywood, California 91605. (Lichtman Decl. ¶ 7.)

Tonic Wholesale, Inc., d/b/a Ace Wholesale

Based on information obtained by Plaintiffs' investigators, Tonic Wholesale, Inc., d/b/a Ace Wholesale, is currently operating out of 1675 South Alameda Street, Los Angeles, California 90021. (Lichtman Decl. ¶¶ 3, 5.)

Koamex General Wholesale, Inc.

Based on information obtained by Plaintiffs' investigators, Koamex General Wholesale, Inc. is currently operating out of 18695 East San Jose Avenue, City of Industry, California 91748. (Lichtman Decl. ¶ 11.)

Frontier Wholesale

Based on information obtained by Plaintiffs' investigators, Frontier Wholesale is currently operating out of 1725 Wood Place, Ventura, California 93003. (Lichtman Decl. ¶ 10.)

Dan-Dee Company

-14-

**[PROPOSED] SEIZURE ORDER**

Based on information obtained by Plaintiffs' investigators, Dan-Dee Company is currently operating out of 3511 Sweetwater Springs Boulevard, Spring Valley, California 91978. (Lichtman Decl. ¶ 17.)

6. "The harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application"

The Distributing Defendants have no legitimate interest in selling, offering for sale, or otherwise distributing counterfeit 5-Hour ENERGY®, and therefore cannot suffer any harm. Plaintiffs, on the other hand, have a very strong interest in protecting the public's health and safety and their marks from the adulterated counterfeits that the Distributing Defendants are selling.

7. "The person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person"

By selling counterfeit 5-Hour ENERGY®, the Distributing Defendants may have knowingly and intentionally engaged in a criminal act. *See* 18 U.S.C. § 2320. Given the specter of criminal prosecution, there is a real risk that the Distributing Defendants will destroy records and inventory to cover up their unlawful conduct. As Congress noted, "many of those who traffic in counterfeits have become skilled at destroying or concealing counterfeit merchandise when a day in court is on the horizon." 130 Cong. Rec. H12076, at 12080. It is for this reason (among others) that Congress created heightened tools and remedies to combat counterfeiting, including the remedy of an *ex parte* seizure.

_____
UNITED STATES DISTRICT JUDGE

Issued: October ___, 2012 at ___ o'clock __.m.

-15-

[PROPOSED] SEIZURE ORDER