1  Thomas P. Mazzucco (tmazzucco@mpbf.com) – CA Bar No. 139758
   Aaron K. McClellan (amcclellan@mpbf.com) – CA Bar No. 197185
2  Bryan L. P. Saalfeld (bsaalfeld@mpbf.com) – CA Bar No. 243331
   Nicholas C. Larson (nlarson@mpbf.com) – CA Bar No. 275870
3  MURPHY, PEARSON, BRADLEY & FEENEY, P.C.
   88 Kearny Street, 10th Floor
   San Francisco, CA  94108-5530
4  Tel:   (415) 788-1900
   Fax:   (415) 393-8087
5
6  Geoffrey Potter gpotter@pbwt.com (*pro hac vice*)
   Christos G. Yatrakis cyatrakis@pbwt.com (*pro hac vice*)
7  Jonah M. Knobler jknobler@pbwt.com (to be admitted *pro hac vice*)
   PATTERSON BELKNAP WEBB & TYLER LLP
8  1133 Avenue of the Americas
   New York, NY 10036
9  Telephone:   (212) 336-2000
   Fax:         (212) 336-2222

10 Attorneys for Plaintiff
   INNOVATION VENTURES, LLC AND LIVING ESSENTIALS, LLC

ORIGINAL
FILED

NOV 1 3 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11

12 **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

13

14 INNOVATION VENTURES, LLC and LIVING
15 ESSENTIALS, LLC,

16                          Plaintiffs,

17          -against-                                    Case No. C 12 5523 WHA

18 PITTSBURG WHOLESALE GROCERS, INC. d/b/a PITCO
19 FOODS; PACIFIC GROSERVICE, INC. d/b/a PITCO
   FOODS; ARISTOTLE PERICLES NAVAB; DAVID
20 LUTTWAY; SANTA MONICA DISTRIBUTING, INC.;
   MANOUCHEHR HEIKALI, a.k.a. DAVID HEIKALI; AZIZ      **FIRST AMENDED**
21 HEIKALI, a.k.a. ED HEIKALI; ELITE WHOLESALE, INC.;  **COMPLAINT**
   TONIC WHOLESALE, INC. d/b/a ACE WHOLESALE;
22 DAPAN USA CORP. d/b/a FRONTIER WHOLESALE;           **DEMAND FOR JURY**
23 SUNG KEUN LEE; DAN-DEE COMPANY, INC.; FADI          **TRIAL**
   ATTIQ; KEVIN ATTIQ; RAHIB, GOLDBERG &
24 ASSOCIATES, INC. d/b/a COURTESY WHOLESALERS;
   STEVEN MILAKOFSKY; UNITED CUSTOM
25 DISTRIBUTORS, LLC; JACUMBA SHELL; and JOHN
   DOES 1-10,
26
27                          Defendants.

28

5687613v.1

**EXHIBIT 1**      **EXHIBIT 2**

1    Plaintiffs Innovation Ventures, LLC and Living Essentials, LLC (together, "Living

2    Essentials" or "Plaintiffs"), by and through their attorneys, Murphy Pearson Bradley & Feeney,

3    for their complaint against Defendants Pittsburg Wholesale Grocers, Inc. d/b/a Pitco Foods;

4    Pacific Groservice, Inc. d/b/a Pitco Foods; Aristotle Pericles Navab; David Luttway; Santa

5    Monica Distributing, Inc.; Manouchehr Heikali, a.k.a. David Heikali; Aziz Heikali, a.k.a. Ed

6    Heikali; Elite Wholesale, Inc.; Tonic Wholesale, Inc. d/b/a Ace Wholesale; Dapan USA Corp.

7    d/b/a Frontier Wholesale; Sung Keun Lee; Dan-Dee Company, Inc.; Fadi Attiq; Kevin Attiq;

8    Rahib, Goldberg & Associates, Inc. d/b/a Courtesy Wholesalers; Steven Milakofsky; United

9    Custom Distributors, LLC; Jacumba Shell; and John Does 1-10 (collectively, "Defendants"),

10   allege as follows:

11                              **NATURE OF THE ACTION**

12        1.      This is an anti-counterfeiting action against those who manufacture,

13   distribute and sell counterfeits of Living Essentials' 5-Hour ENERGY®, the world's best-selling

14   energy dietary supplement.  With annual retail sales in excess of $1 billion, 5-Hour ENERGY® is

15   used regularly by millions of consumers.  Those consumers are being exposed to unlawful,

16   misbranded counterfeits being sold nationwide, including in this District.

17        2.      The counterfeiters have carefully and faithfully reproduced the authentic

18   packaging, along with accurate depictions of Living Essentials' trademarks and copyrighted text.

19   Only with a close and meticulous inspection can the counterfeit bottles and packaging be

20   distinguished from the authentic.

21        3.      However, the liquid dietary supplement held within the counterfeit bottles

22   can easily be distinguished from the authentic by its unpleasant odor, taste and color.  Consumers

23   have complained, and laboratory analysis has proved, that the counterfeits are made from a

24   different recipe that lacks essential ingredients, such as vitamin $B_{12}$.  Moreover, the conditions

25   under which the criminal counterfeiters manufactured their product and the ingredients they used

26   are unknown.

27        4.      Since filing this action, Living Essentials has either seized or quarantined

28   approximately 1.8 *million* bottles of counterfeit 5-Hour ENERGY®, and has discovered invoices

- 2 -

1    and other sales records evidencing the sale of millions more.

2        5.    In particular, through execution of this Court's October 26, 2012 seizure

3    order and other discovery, it has emerged that Defendant Dan-Dee Company, Inc. ("Dan-Dee")

4    served as the national distribution hub of the counterfeiting conspiracy. Between March and

5    October 2011 alone, Dan-Dee received 3,130,920 bottles of counterfeit 5-Hour ENERGY® from

6    the counterfeiters and resold most of those bottles to customers (chiefly other wholesalers) in

7    California, Michigan, Illinois, Florida, Texas, and Pennsylvania. From there, the counterfeit

8    bottles wended their way to retail stores across the country.

9        6.    On October 24, 2012, two days before this action was filed, Living

10   Essentials' private investigators attempted to purchase 5-Hour ENERGY® from Dan-Dee. As a

11   Dan-Dee employee was completing the sale, its principal, Kevin Attiq, hurried over and

12   terminated the transaction. Even more suspiciously, on October 29, 2012, Kevin Attiq had an

13   employee drive approximately 63,500 bottles of counterfeit 5-Hour ENERGY® off the premises

14   and hide it at a nearby parking lot while the court-ordered seizure at Dan-Dee was in progress.

15   Kevin Attiq admitted at his deposition that he directed his employees to move the truck so that the

16   product would not be found during the execution of the Court's seizure order.

17       7.    Among Dan-Dee's largest customers of counterfeit 5-Hour ENERGY®

18   were Defendant Pittsburg Wholesale Grocers, Inc. d/b/a Pitco Foods and Defendant Pacific

19   Groservice, Inc. d/b/a Pitco Foods (collectively, "Pitco"). On October 29, 2012, Living Essentials

20   seized from Pitco approximately 130,953 bottles of counterfeit product that Pitco had bought

21   from Dan-Dee.

22       8.    At the November 7, 2012 preliminary injunction hearing, Pitco insisted that

23   it was an innocent infringer. Pitco submitted no fewer than six sworn declarations from

24   responsible employees stating the following, or words to similar effect: "Until the day of the

25   seizure, I had *no idea* that some portion of the 5-Hour Energy in our inventory was counterfeit,

26   *nor did I have any reason to be suspicious* of the product" (emphasis added).

27       9.    Counsel for Pitco strenuously vouched for these sworn statements at the

28   hearing, representing to the Court that, having spent days speaking with Pitco employees and

- 3 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

"poring over the papers that [Plaintiffs] had seized during the seizure," they could confirm that Pitco had "*no idea that the products were counterfeited* until they were raided last Monday" (emphasis added).

10. However, discovery has revealed that Pitco's sworn statements to the Court were incontrovertibly false. Documents seized by Living Essentials during the seizure of Pitco show that more than one month before that seizure, an authorized broker for Living Essentials notified Pitco in writing that "*we cannot verify that the Berry & Extra Strength Berry 5-hour Energy being sold by Pitco Foods is authentic 5-hour Energy product*" (emphasis added). The very Pitco employee who received this notification, Scarlet Disho, is one of the declarants who insisted to the Court that she had "no idea" that Pitco was selling counterfeits, "nor did [she] have any reason to be suspicious."

11. Instead of responding to the broker's warning with concern, Pitco falsely told the broker that the *only* supplier from whom it had ever purchased 5-Hour ENERGY® was Living Essentials itself. In fact, as Pitco now concedes, it was purchasing huge quantities of 5-Hour ENERGY® from Dan-Dee at the time. From its own submissions, it is clear that Pitco made no attempt to verify the authenticity of the Dan-Dee product that had been called into question — product which in fact turned out to be counterfeit.

12. As a result of seizures and discovery, Living Essentials has learned that an additional four customers each purchased at least 1,200 bottles of 5-Hour ENERGY® from Dan-Dee that, on information and belief, were counterfeit. In this First Amended Complaint, Living Essentials has added these customers as defendants.

13. To put an end to this potentially dangerous conduct, and to recover the damages caused by it, Living Essentials brings this anti-counterfeiting action for injunctive and monetary relief for trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); false descriptions and false designations of origin in commerce in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); trademark dilution in violation of Section 43 of the Lanham Act (15 U.S.C. § 1125); contributory trademark infringement; violation of the Copyright Act of 1976 (17 U.S.C. § 106); false advertising under Cal. Bus. & Prof. Code §

- 4 -

17500; unfair competition under Cal. Bus. & Prof. Code § 17200; and common-law unfair competition and unjust enrichment under California law.

## THE PARTIES

**Plaintiffs – Innovation Ventures, LLC and Living Essentials, LLC**

14.     Plaintiff Innovation Ventures, LLC is a Michigan limited-liability company with its principal place of business at 38955 Hills Tech Drive, Farmington Hills, Michigan 48331. Innovation Ventures, LLC is the owner of the 5-Hour ENERGY® trademark, copyright and trade dress described below.

15.     Plaintiff Living Essentials, LLC is a wholly-owned subsidiary of Innovation Ventures and distributes the 5-Hour ENERGY® product, with its principal place of business at 38955 Hills Tech Drive, Farmington Hills, Michigan 48331.

16.     Plaintiffs are collectively referred to herein as "Living Essentials."

**Defendants Named In Plaintiffs' Original Complaint**

17.     On information and belief, Defendant Dan-Dee Company, Inc. is a California corporation with its principal place of business at 3511 Sweetwater Springs Boulevard, Spring Valley, California 91978.

18.     On information and belief, Defendant Fadi Attiq and Defendant Kevin Attiq are the principals and owners of Dan-Dee, and in that capacity, operate and control Dan-Dee.

19.     On information and belief, Defendant Pittsburg Wholesale Grocers, Inc. d/b/a Pitco Foods is a California corporation with its principal place of business at 567 Cinnabar Street, San Jose, California 95110.

20.     On information and belief, Defendant Pacific Groservice, Inc. d/b/a Pitco Foods is a California corporation with its principal place of business at 567 Cinnabar Street, San Jose, California 95110.

21.     On information and belief, Defendants Pittsburg Wholesale Grocers, Inc. d/b/a Pitco Foods and Pacific Groservice, Inc. d/b/a Pitco Foods hold themselves out as, and do business as, a single entity named "Pitco Foods"; share the same officers; and do not observe

- 5 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1    corporate formalities. Accordingly, they are alter egos of one another and are liable for one

2    another's unlawful conduct.

3              22.    Defendants Pittsburg Wholesale Grocers, Inc. d/b/a Pitco Foods and Pacific

4    Groservice, Inc. d/b/a Pitco Foods are collectively referred to herein as "Pitco."

5              23.    On information and belief, Defendants Aristotle Pericles Navab and David

6    Luttway are the principals of Pitco, and in that capacity, operate and control Pitco.

7              24.    On information and belief, Defendant Santa Monica Distributing, Inc.

8    ("Santa Monica") is a California corporation with its principal place of business at 3180 Olympic

9    Boulevard, Santa Monica, California 90404.

10             25.    On information and belief, Defendants Manouchehr Heikali, a.k.a. David

11   Heikali, and Aziz Heikali, a.k.a. Ed Heikali, are the owners and principals of Santa Monica, and

12   in that capacity, operate and control Santa Monica.

13             26.    On information and belief, Defendant Elite Wholesale, Inc. ("Elite") is a

14   California corporation with its principal place of business at 12323 Sherman Way, North

15   Hollywood, California 91605.

16             27.    On information and belief, Defendant Tonic Wholesale, Inc. d/b/a Ace

17   Wholesale ("Ace") is a California corporation with its principal place of business at 1675 South

18   Alameda Street, Los Angeles, California 90021.

19             28.    On information and belief, Defendant Dapan USA Corp. d/b/a Frontier

20   Wholesale ("Frontier") is a California corporation with its principal places of business at 1725

21   Wood Place, Ventura, California 93003 and 17300 Signature Drive, Granada Hill, California

22   91344.

23             29.    On information and belief, Defendant Sung Keun Lee is the principal of

24   Frontier, and in that capacity, operates and controls Frontier.

25   **New Defendants (Major Customers of Dan-Dee)**

26             30.    On information and belief, Defendant Rahib, Goldberg & Associates, Inc.

27   d/b/a Courtesy Wholesalers is a California corporation with its principal place of business at 6001

28   East Slauson Avenue, Commerce, California 90040.

- 6 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

1        31.    On information and belief, Defendant Steven Milakofsky is an individual

2  and a Pennsylvania citizen who resides at 1509 Wynnemoor Way, Fort Washington,

3  Pennsylvania 19034.

4        32.    On information and belief, Defendant United Custom Distributors, LLC is

5  a Michigan limited liability company with its principal place of business at 25700 West Eight

6  Mile Road, Southfield, Michigan 48033.

7        33.    On information and belief, Defendant Jacumba Shell is a business entity

8  located at 1494 Carrizo Gorge Road, Jacumba, California 91934.

9  **Unknown Defendants**

10        34.    On information and belief, Defendants John Does 1-10 are other persons or

11  entities involved in the manufacture, marketing, distribution and/or sale of counterfeit 5-Hour

12  ENERGY® whose identities are presently unknown.

13                      **JURISDICTION AND VENUE**

14        35.    This Court has subject matter jurisdiction over this action pursuant to 15

15  U.S.C. §§ 1121(a), 1331, 1338, 1367, and general principles of ancillary and pendent jurisdiction.

16        36.    The Court has personal jurisdiction over each of the Defendants because

17  each Defendant has had continuous, systematic, and substantial contacts with the State of

18  California, including doing business in California and/or having a place of business within

19  California.

20        37.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)

21  because a substantial part of the events giving rise to Living Essentials' claims occurred in this

22  district.

23                      **FACTUAL ALLEGATIONS**

24  **The 5-Hour ENERGY® Product**

25        38.    Since 2004, Living Essentials has owned, manufactured, and distributed a

26  dietary supplement called 5-Hour ENERGY®, which is sold as a liquid in 1.93-ounce bottles at

27  more than 100,000 retail locations in the United States. 5-Hour ENERGY® is formulated from a

28  proprietary recipe of vitamins and amino acids.

- 7 -

39.     Millions of people use this best-selling dietary supplement to boost their energy. On the average, more than 9 million bottles of 5-Hour ENERGY® are sold each week. Total annual retail sales are in excess of one billion dollars. To date, a total of over 1.5 billion bottles of 5-Hour ENERGY® have been manufactured and sold by Living Essentials.

40.     All authentic 5-Hour ENERGY® is manufactured, under strict quality control, according to a specific and consistent formula at two factories located in Wabash, Indiana. These state-of-the-art facilities are owned and operated by Living Essentials and regulated by the United States Food and Drug Administration ("FDA") and subject to FDA inspection and current Good Manufacturing Practices.

41.     Authentic 5-Hour ENERGY® is manufactured and sold in several varieties, including Berry flavor, Orange flavor, and Extra-Strength Berry flavor.

**Living Essentials' Protected Intellectual Property**

42.     For use with 5-Hour ENERGY®, Living Essentials is the owner of a well-established family of famous trademarks including, among others, the following registered trademarks that appear on the packaging for genuine 5-Hour ENERGY® (collectively referred to herein as the "5-Hour ENERGY Marks"):

    a. Living Essentials' "5 HOUR ENERGY" trademark was registered on the Supplemental Register of the United States Patent and Trademark Office on September 27, 2005 as U.S. Registration No. 3,003,077;

    b. Living Essentials' "5-Hour ENERGY" trademark was registered on the Principal Register of the United States Patent and Trademark Office on August 2, 2011 as U.S. Registration No. 4,004,225;

    c. Living Essentials' **5-hour ENERGY** trademark was registered on the Principal Register of the United States Patent and Trademark Office on February 28, 2012 as U.S. Registration No. 4,104,670;

    d. Living Essentials' trademark, which includes the wording "5-Hour ENERGY" in black outlined in yellow, below which are the words "EXTRA STRENGTH" in yellow, along with a person in black

- 8 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

silhouette, outlined in yellow, shown in an athletic pose adjacent to an uneven landscape, with the sky depicted in transitioning colors from black to red as the sky meets the landscape, was registered on the Principal Register of the United States Patent and Trademark Office on March 27, 2012 as U.S. Registration No. 4,116,951;



e.   Living Essentials'  trademark, commonly referred to as "Running Man," was registered on the Principal Register of the United States Patent and Trademark Office on October 20, 2009 as U.S. Registration No. 3,698,044; and



f.   Living Essentials'  trademark, which includes the wording "5-Hour ENERGY" in black outlined in yellow, along with a person in black silhouette, outlined in yellow, shown in an athletic pose adjacent to an uneven landscape, with the sky depicted in transitioning colors from red to yellow as the sky meets the landscape, was registered on the Principal Register of the United States Patent and Trademark Office on September 17, 2010 as U.S. Registration No. 4,120,360.

43.   True and correct copies of the registrations for the 5-Hour ENERGY Marks are attached hereto as **Exhibit 1**.

44.   Living Essentials has used and is currently using the 5-Hour ENERGY Marks in commerce and in connection with its sale of 5-Hour ENERGY®, and plans to continue such use in the future.

45.   Living Essentials owns United States Copyright Registration Number TX 6-833-514 for the "Caution" label used on the 5-Hour ENERGY® bottle (the "5-Hour ENERGY Copyright"). A true and correct copy of the United States Copyright Registration Certificate is attached hereto as **Exhibit 2**. The copyrighted work reads as follows:

CAUTION: Contains about as much caffeine as a cup of coffee. Limit caffeine products to avoid nervousness, sleeplessness, and occasionally rapid heartbeat. You may experience a Niacin Flush (hot feeling, skin redness) that lasts a few minutes. This is caused by Niacin (Vitamin B3) increasing blood flow near the skin.

46.   Living Essentials has used and is currently using the 5-Hour ENERGY Copyright in commerce and in connection with its sale of 5-Hour ENERGY®, and plans to

- 9 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1    continue such use in the future.

2          47.    Living Essentials uses distinctive packaging (the "5-Hour ENERGY Trade

3    Dress") to distinguish its 5-Hour ENERGY® products in the marketplace.  Living Essentials is

4    the owner of the 5-Hour ENERGY Trade Dress, which consists of, but is not limited to, the

5    packaging illustrated below:



15         48.    Living Essentials has used the distinctive packaging pictured on the left,

16   above, since as early as 2004 and through the present date.  Living Essentials has used the

17   distinctive packaging pictured on the right, above, since as early as 2008 and through the present

18   date.  Living Essentials is currently using the 5-Hour ENERGY Trade Dress in commerce and in

19   connection with its sale of 5-Hour ENERGY®, and plans to continue such use in the future.

20         49.    The 5-Hour ENERGY Trade Dress is arbitrary, non-functional, and

21   distinctive.

22         50.    The 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress have

23   been extensively and continuously used by Living Essentials, and are inherently distinctive and/or

24   have become distinctive through the acquisition of secondary meaning.

25         51.    In the last five years, more than $500 million has been spent on advertising

26   and promoting 5-Hour ENERGY®.  Living Essentials prominently displays the 5-Hour

27   ENERGY Marks and the 5-Hour ENERGY Trade Dress in its advertising and promotional

28   materials.

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

52.     As a result of extensive promotion to its customers through various forms of national media, including but not limited to television, radio, Internet, and print advertisements, the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress are widely recognized.

53.     As a result of Living Essentials' extensive advertising and marketing efforts since 2004, sales of 5-Hour ENERGY® have increased at a substantial rate.  Since 2004, billions of dollars' worth of 5-Hour ENERGY® have been sold to millions of consumers.

54.     As a result of the extensive advertising of 5-Hour ENERGY® in connection with the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress, the widespread sale of 5-Hour ENERGY®, and the celebrity that the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress have achieved, dietary supplements bearing the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress have been and are now recognized by the public and in the trade as originating from a single source, Living Essentials.

55.     Dietary supplements bearing the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress have come to be known by the purchasing public throughout the United States as dietary supplements of the highest quality.

56.     The 5-Hour ENERGY Marks, the 5-Hour ENERGY Copyright, and the 5-Hour ENERGY Trade Dress symbolize business goodwill of Living Essentials and are invaluable assets to Living Essentials.

**Living Essentials' Discovery Of Counterfeit Product**

57.     In late September 2012, Living Essentials was contacted by a salesman who suspected that he had encountered bottles of 5-Hour ENERGY® that had been diverted. Living Essentials examined the bottles and determined — to its horror — that they were fakes.

58.     Although the authentic and counterfeit products appear similar at first glance, a close inspection reveals numerous differences.  For example:

- The counterfeit bottles are slightly shorter than the authentic bottles.
- The label of the Extra-Strength Berry flavor of the counterfeit product contains a typographical error on its label in the list of ingredients.  Namely, the words "Artificial Flavors" in the list of ingredients is misspelled on the counterfeits as "Art ficial Flavors."

- 11 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

- The caps of all authentic bottles have a raised "pimple" mark in the center, which is an artifact of the plastic molding process. The caps of the counterfeit bottles are sometimes smooth and lack any raised mark.

- The caps of the authentic bottles feature Living Essentials' "Running Man" logo, a silhouette of a man running. The caps of the counterfeit bottles feature a slightly fatter silhouette of a man running.

- Although authentic 5-Hour ENERGY® comes in various flavors, including Berry, Orange, and Extra-Strength Berry, the liquid inside the bottle is always the same pale pink color. By contrast, the liquid inside the counterfeit bottles is strikingly different from one flavor variety to the next — and the counterfeit Orange and Extra-Strength Berry varieties are strikingly different in color from the corresponding varieties of the authentic product. For example, the counterfeit Extra-Strength is colored orange, a color that Living Essentials does not have in its factories.

- The counterfeit product does not taste and smell the same as the genuine product, a fact that has been noticed by a number of consumers of 5-Hour ENERGY® who have contacted Living Essentials under the impression that they purchased defective product.

- Forensic analysis has determined that, unlike genuine 5-Hour ENERGY®, which contains 8333% of the RDI of vitamin $B_{12}$, the counterfeit product contains *no* detectable vitamin $B_{12}$ — notwithstanding that the counterfeit product's label claims to contain the same amount of vitamin $B_{12}$ as the authentic product.

- Although genuine 5-Hour ENERGY® contains no sugar, forensic analysis has determined that the counterfeit 5-Hour ENERGY® *does* contain sugar — even though it claims on its bottle that it does not.

- Forensic analysis has determined that the dyes used to print the boxes in which the counterfeit product is distributed are chemically different from the dyes used to print authentic 5-Hour ENERGY® boxes.

59.     Thus far, all of the counterfeit 5-Hour ENERGY® appears to bear the following lot numbers and expiration dates:

| FLAVOR | LOT NUMBER | EXPIRATION |
|---|---|---|
| Berry | 105112W4 | 01/2014 |
| Berry | 112611A4 | 04/2013 |
| Orange | 115111A2 | 04/2013 |
| Orange | 105112R2 | 01/2014 |
| Extra-Strength Berry | 115811P3 | 04/2013 |
| Extra-Strength Berry | W08912J4 | 01/2014 |

However, only a small sample of the counterfeits have so far been examined, and of course, until the counterfeiters are stopped, they can continue to make changes to their counterfeits.

60.     Living Essentials is not aware of serious adverse events associated with the counterfeits. However, Living Essentials cannot vouch for their safety or purity. The counterfeits have been manufactured by unknown criminals at an unknown location or locations. Living

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1   Essentials does not, therefore, know under what conditions the counterfeits have been

2   manufactured or the ingredients that have been used in the counterfeits.

3          61.    Nor can Living Essentials vouch for the efficacy of the counterfeits.  In

4   fact, Living Essentials has received complaints from dissatisfied consumers that the counterfeit

5   products "did not provide any energy."

6          62.    As noted above, Living Essentials' ongoing forensic analysis has

7   determined that the nutritional information listed on the label of the counterfeit product is grossly

8   inaccurate in material respects.  As a result, the counterfeit product is misbranded under the

9   Federal Food, Drug and Cosmetic Act and subject to seizure by the FDA.  *See* 21 U.S.C. §

10  343(q).  Further analysis may well reveal other deviations from the nutritional information stated

11  on the label of the counterfeit product.

12         63.    Furthermore, authentic 5-Hour ENERGY® is manufactured under strict

13  supervision of Star-K Kosher Supervision, and accordingly, it is labeled as kosher.  While the

14  counterfeit product is labeled with the same kosher designation, it is almost certainly *not*

15  manufactured under the supervision of Jewish religious authorities.  Accordingly, it is unfit for

16  consumption under Jewish law.

17  **Living Essentials' Investigation Connects The Original Defendants With The Counterfeits**

18         64.    As soon as it learned of the existence of counterfeit product, Living

19  Essentials retained counsel, who conducted an extensive, rapid nationwide investigation to

20  uncover those responsible for the counterfeits.

21         65.    Living Essentials conducted purchases of authentic and counterfeit 5-Hour

22  ENERGY® in hundreds of retail and wholesale locations nationwide, including the Northern

23  District of California.

24         66.    Upon ascertaining that 5-Hour ENERGY® products purchased from a

25  retailer were counterfeit, the investigators asked the retailer where they had obtained those

26  products.  When the investigators received this information, they attempted to purchase larger

27  quantities of counterfeit 5-Hour ENERGY® directly from the retailers' suppliers.

28         67.    By this method, Living Essentials was able to identify wholesalers and

- 13 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

distributors who had trafficked in large quantities of counterfeit 5-Hour ENERGY® and had distributed the counterfeit products to multiple retailers.

68.    In addition, investigators purchased 5-Hour ENERGY® directly from certain wholesalers. A number of products purchased directly from wholesalers were discovered to be counterfeit.

69.    Among the wholesalers and distributors of counterfeit 5-Hour ENERGY® identified in this manner were the entities named as defendants in the original Complaint: Dan-Dee, Pitco, Santa Monica, Elite, Ace, and Frontier.

**Living Essentials Files This Lawsuit And Conducts Seizures And Discovery**

70.    On October 26, 2012, Living Essentials filed its original Complaint. That same day, the Court issued *ex parte* orders against the original defendants, *inter alia*, temporarily restraining them from selling counterfeit 5-Hour ENERGY® and authorizing Living Essentials to seize counterfeit 5-Hour ENERGY® and related business records from the defendants' premises.

71.    On October 29, 30, and 31 and November 1, 2012, Living Essentials executed the Court's seizure order at the premises of Dan-Dee, Pitco, Santa Monica, Elite, Ace, and Frontier. As described further below, in the course of those seizures, Living Essentials discovered over 100,000 bottles of counterfeit 5-Hour ENERGY®, invoices for the purchase of millions of dollars of counterfeit 5-Hour ENERGY®, and records revealing the identity of those defendants' sources and their downstream customers of counterfeit product.

**Defendants' Actionable Conduct**

*Dan-Dee Company, Inc., Kevin Attiq, And Fadi Attiq*

72.    On October 29, 2012, Living Essentials executed the Court's seizure order at Dan-Dee's premises. The business records Living Essentials discovered at the seizure revealed that Dan-Dee had purchased approximately 3,130,920 units of counterfeit 5-Hour ENERGY® for a total price of approximately $3,814,810, and that Living Essentials had resold that product to customers (mostly wholesalers or distributors) in California, Michigan, Illinois, Florida, Texas, and Pennsylvania.

73.    On information and belief, as owners and principals of Dan-Dee,

- 14 -

1    Defendant Fadi Attiq and Defendant Kevin Attiq were the moving, active and conscious force

2    behind Dan-Dee's unlawful conduct described herein.

3    ***Pitco, Aristotle Pericles Navab, and David Luttway***

4          74.    On October 12, 2012, a private investigator purchased 16 bottles of

5    counterfeit 5-Hour ENERGY® from a Save Rite Market at 701 19th Street, Sacramento,

6    California 95811.  The store's owner informed the investigator that she had purchased the 5-Hour

7    ENERGY® from "Pitco."

8          75.    On October 17, 2012, a private investigator purchased 10 bottles of

9    counterfeit 5-Hour ENERGY® from Del Norte Liquor at 11299 San Pablo Avenue, Unit P, El

10   Cerrito, California 94530.  The store's owner informed the investigator that she purchased the 5-

11   Hour ENERGY® from "Pitco."

12         76.    On October 16, 2012, a private investigator purchased three master cases

13   (containing 216 bottles each) of counterfeit 5-Hour ENERGY® directly from a warehouse

14   belonging to Pitco at 727 Kennedy Street, Oakland, California 94606.

15         77.    On October 17, 2012, a private investigator purchased two master cases

16   (containing 216 bottles each) of counterfeit 5-Hour ENERGY® from a warehouse belonging to

17   Pitco at 385 Valley Drive, Brisbane, California 94005.

18         78.    On October 29, 2012, Living Essentials executed the Court's seizure order

19   at four warehouses owned by Pitco in San Jose, Brisbane, Oakland, and West Sacramento. Living

20   Essentials recovered approximately 130,953 bottles of counterfeit 5-Hour ENERGY® at Pitco's

21   four warehouses.  Pitco identified Dan-Dee as its source of the counterfeit 5-Hour ENERGY®.

22         79.    On information and belief, as principals of Pitco, Defendants Aristotle

23   Pericles Navab and David Luttway were the moving, active and conscious force behind Pitco's

24   unlawful conduct described herein.

     ***Santa Monica, Manouchehr Heikali, a.k.a. David Heikali, and Aziz Heikali, a.k.a. Ed Heikali***

25         80.    On October 16, 2012, a private investigator purchased a 12-pack of

26   counterfeit 5-Hour Energy® from Santa Monica at 3180 W. Olympic Boulevard, Santa Monica,

27   California 90404.

28         81.    On November 1, 2012, Living Essentials executed the Court's seizure

                                        - 15 -

                                        FIRST AMENDED COMPLAINT
                                        CASE NO. C 12 5523 WHA

1   order at the premises of Santa Monica and seized 1,704 bottles of counterfeit 5-Hour ENERGY®.

2         82.    Business records discovered during the seizure revealed that Santa Monica

3   had acquired its counterfeit 5-Hour ENERGY® from Dan-Dee.  A Santa Monica employee stated

4   that Santa Monica had worked with "Kevin" (presumably defendant Kevin Attiq) at Dan-Dee.

5         83.    On information and belief, as principals of Santa Monica, Defendant

6   Manouchehr Heikali, a.k.a. David Heikali, and Defendant Aziz Heikali, a.k.a. Ed Heikali, were

7   the moving, active and conscious force behind Santa Monica's unlawful conduct described

8   herein.

9   ***Elite, Ace, Frontier, And Sung Keun Lee***

10         84.    On October 17, 2012, a private investigator purchased a master case

11   (containing 216 bottles) of counterfeit 5-Hour ENERGY® from Elite at 12323 Sherman Way,

12   North Hollywood, California 91605.

13         85.    On October 29, 2012, Living Essentials executed the Court's seizure order

14   at Elite and recovered approximately 4,152 bottles of counterfeit 5-Hour ENERGY®.

15         86.    An Elite employee identified MOA Trading, of Chino Hills, California, as

16   its source of counterfeit 5-Hour ENERGY®.  (MOA Trading was a direct customer of Dan-Dee.)

17         87.    On October 12, 2012, a private investigator purchased two bottles of

18   counterfeit 5-Hour ENERGY® from Overland Market at 300 Overland Avenue, Los Angeles,

19   California 90034.  The store's owner informed the investigator that she had purchased the 5-Hour

20   ENERGY® from Ace Wholesale in downtown Los Angeles.

21         88.    On October 16, 2012, a private investigator purchased two boxes of

22   counterfeit 5-Hour ENERGY® (consisting of 12 bottles each) directly from Ace at 1675 S.

23   Alameda Street, Los Angeles, California 90021.

24         89.    On October 18, 2012, a private investigator purchased two master cases

25   (containing 216 bottles each) of counterfeit 5-Hour ENERGY directly from Ace at 1675 S.

26   Alameda Street, Los Angeles, California 90021.

27         90.    On October 30, 2012, Living Essentials executed the Court's seizure order

28   at Ace and recovered approximately 5,856 bottles of counterfeit 5-Hour ENERGY®.  Ace

- 16 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1    employees also identified MOA Trading as its source of counterfeit product.

2           91.     On October 23, 2012, a private investigator purchased twenty-six 12-packs

3    of counterfeit 5-Hour ENERGY® in Berry and Orange flavors from Frontier at 1725 Wood

4    Place, Ventura, California 93003.  An employee told the investigator that Frontier purchases its 5-

5    Hour ENERGY® twice a week from Elite.

6           92.     On October 31, 2012, Living Essentials executed the Court's seizure order

7    at Frontier and recovered approximately 324 bottles of counterfeit 5-Hour ENERGY®.

8           93.     On information and belief, as principal of Frontier, Defendant Sung Keun

9    Lee was the moving, active and conscious force behind Frontier's unlawful conduct described

10   herein.

11          94.     During the seizures at Ace, Elite, and Frontier, employees confirmed that

12   Elite, Ace, and Frontier are related entities; that Elite and Ace are owned by the same individual;

13   that the three entities are operated by members of the same family; that Elite had typically done

14   all the ordering for Ace; and that Frontier acquired its products from Elite.

15   ***New Defendants (Major Customers of Dan-Dee)***

16   Rahib, Goldberg & Associates, Inc. d/b/a Courtesy Wholesalers

17          95.     On October 27, 2012, Rahib, Goldberg & Associates, Inc. d/b/a Courtesy

18   Wholesalers purchased from Dan-Dee 450 12-packs of Extra-Strength Berry 5-Hour ENERGY®

19   ($16.65/each), 846 12-packs of Berry 5-Hour ENERGY® ($15.30/each), and 108 12-packs of

20   Orange 5-Hour ENERGY® ($15.30/each), for a total of approximately $22,088.70.

21          96.     On information and belief, all of these products were counterfeit.

22   Steven Milakofsky

23          97.     On 10/8/2012, Steven Milakofsky purchased from Dan-Dee 468 12-packs

24   of Berry 5-Hour ENERGY® ($16.50/each), for a total of approximately $7,722.00.

25          98.     On 8/6/2012, Steven Milakofsky purchased from Dan-Dee 324 12-packs of

26   Berry 5-Hour ENERGY® ($16.50/each), 108 12-packs of Orange 5-Hour ENERGY®

27   ($16.50/each), and 324 12-packs of Extra-Strength Berry 5-Hour ENERGY® ($18.15/each), for a

28   total of approximately $13,008.60.

- 17 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

1    99.    On information and belief, all of these products were counterfeit.

2    United Custom Distributors, LLC

3    100.    On June 5, 2012, United Custom Distributors, LLC purchased from Dan-

4    Dee 252 master cases of Extra-Strength Berry 5-Hour ENERGY® ($300/each) and 210 master

5    cases of Berry 5-Hour ENERGY® ($275/each), for a total of approximately $133,350.00.

6    101.    On August 21, 2012, United Custom Distributors, LLC purchased from

7    Dan-Dee 84 master cases of Berry 5-Hour ENERGY® ($278/each) and 42 master cases of

8    Orange 5-Hour ENERGY® ($278/each), for a total of approximately $35,028.00.

9    102.    On information and belief, all of these products were counterfeit.

10    Jacumba Shell

11    103.    On 6/8/2012, Jacumba Shell purchased from Dan-Dee 36 12-packs of

12    Extra-Strength Berry 5-Hour ENERGY® for $19.49/each, for a total of approximately $701.64.

13    104.    On 7/6/2012, Jacumba Shell purchased from Dan-Dee 36 12-packs of

14    Extra-Strength Berry 5-Hour ENERGY® for $19.49/each, and 108 12-packs of Berry 5-Hour

15    ENERGY® for $16.53/each, for a total of approximately $2,486.88.

16    105.    On information and belief, all of these products were counterfeit.

17    ***Involvement Of Defendants John Does 1-10***

18    106.    In addition to the defendants identified by name in this Amended

19    Complaint, on information and belief, additional persons and entities whose identities are

20    presently unknown are involved in the manufacture, distribution and sale of counterfeit 5-Hour

21    ENERGY®.  Plaintiffs intend to further amend this Amended Complaint to identify these

22    additional persons and entities by name as their identities are revealed during the course of

23    discovery.

24    **FIRST CLAIM FOR RELIEF**
     **FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1)(a))**

25

26    107.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 106

27    of this Amended Complaint as if fully set forth herein.

28    108.    In violation of 15 U.S.C. § 1114(1)(a), Defendants, independently and in

- 18 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1    conspiracy with one another, used in commerce, without Plaintiffs' consent, either a reproduction,

2    counterfeit, copy or colorable imitation of the 5-Hour ENERGY Marks and the 5-Hour ENERGY

3    Trade Dress in connection with the sale, offering for sale, distribution, or advertising of

4    counterfeit packaged 5-Hour ENERGY® dietary supplements or in connection with which such

5    use that is likely to cause confusion, or to cause mistake, or to deceive.

6           109.    Defendants' actions constitute willful infringement of Plaintiffs' exclusive

7    rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.

8           110.    As a direct and proximate result of Defendants' conduct, Plaintiffs have

9    suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade

10   Dress and their reputation in the industry.  Unless Defendants are restrained from further

11   infringement of the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress, Plaintiffs

12   will continue to be irreparably harmed.

13          111.    Plaintiffs have no adequate remedy at law that will compensate for the

14   continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

15          112.    As a direct and proximate result of Defendants' conduct, Plaintiffs have

16   suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress

17   and other damages in an amount to be proved at trial.

18                              **SECOND CLAIM FOR RELIEF**
     **FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1)(b))**
19

20          113.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 112

21   of this Amended Complaint as if fully set forth herein.

22          114.    In violation of 15 U.S.C. § 1114(1)(b), Defendants, independently and in

23   conspiracy with one another, reproduced, counterfeited, copied or colorably imitated the

24   registered 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress belonging to Plaintiffs

25   and applied such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints,

26   packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in

27   connection with the offering for sale, distribution or advertising of counterfeit 5-Hour ENERGY®

28   or in connection with such use that is likely to cause confusion, to cause mistake or to deceive.

                                        - 19 -              FIRST AMENDED COMPLAINT
                                                           CASE NO. C 12 5523 WHA

5687613v.1

1      115.   Defendants' actions constitute willful infringement of Plaintiffs' exclusive

2   rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.

3      116.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

4   suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade

5   Dress and their reputation in the industry.  Unless Defendants are restrained from further

6   infringement of the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress, Plaintiffs

7   will continue to be irreparably harmed.

8      117.   Plaintiffs have no adequate remedy at law that will compensate for the

9   continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

10      118.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

11   suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress

12   and other damages in an amount to be proved at trial.

13   **THIRD CLAIM FOR RELIEF**<br>**CONTRIBUTORY TRADEMARK INFRINGEMENT**

14
15      119.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 118

15   of this Amended Complaint as if fully set forth herein.
16
16      120.   Defendants, independently and in conspiracy with one another,
17
17   intentionally induced other parties to infringe the 5-Hour ENERGY Marks and the 5-Hour
18
18   ENERGY Trade Dress.
19
19      121.   Defendants, independently and in conspiracy with one another, continued
20
20   to supply their product to persons whom they knew or had reason to know were infringing the 5-
21
21   Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.
22
22      122.   Defendants, independently and in conspiracy with one another, failed to
23
23   take reasonable precautions against the occurrence of third parties' infringement of the 5-Hour
24
24   ENERGY Marks and the 5-Hour ENERGY Trade Dress under circumstances in which the
25
25   infringing conduct could reasonably be anticipated.
26
26      123.   Defendants' actions constitute contributory infringement of Plaintiffs'
27
27   exclusive rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.
28
28      124.   As a direct and proximate result of Defendants' conduct, Plaintiffs have

- 20 -

5687613v.1

suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and their reputation in the industry. Unless Defendants are restrained from further contributory infringement of the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress, Plaintiffs will continue to be irreparably harmed.

125. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

126. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and other damages in an amount to be proved at trial.

**FOURTH CLAIM FOR RELIEF**
**FALSE DESCRIPTION AND DESIGNATION OF ORIGIN IN COMMERCE**

127. Plaintiffs reallege and incorporate by reference paragraphs 1 through 126 of this Amended Complaint as if fully set forth herein.

128. In violation of 15 U.S.C. § 1125(a)(1)(A), Defendants, independently and in conspiracy with one another, in connection with the counterfeit 5-Hour ENERGY® products, used in commerce a slogan, trade dress, word, term, name, symbol or device, or any combination thereof, or a false designation of origin, false or misleading description of fact or false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection, or association with Plaintiffs.

129. Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.

130. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and their reputation in the industry. Unless Defendants are restrained from further infringement of the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress, Plaintiffs will continue to be irreparably harmed.

131. Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

132. As a direct and proximate result of Defendants' conduct, Plaintiffs have

- 21 -

5687613v.1

suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress

and other damages in an amount to be proved at trial.

## FIFTH CLAIM FOR RELIEF
## FEDERAL FALSE ADVERTISING

133.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 132

of this Amended Complaint as if fully set forth herein.

134.    In violation of 15 U.S.C. § 1125(a)(1)(B), Defendants, independently and

in conspiracy with one another, in connection with the sale of the counterfeit 5-Hour ENERGY®

products, used a slogan, trade dress, word, term, name, symbol, or device or any combination

thereof, or a false designation of origin, false or misleading description of fact, or false or

misleading representation of fact, which in commercial advertising or promotion, misrepresents

the nature, characteristics, and qualities of the counterfeit 5-Hour ENERGY® products.

135.    On information and belief, Defendants advertised, marketed and promoted

the counterfeit 5-Hour ENERGY® products to the public, and/or to specific segments of the

public, using Plaintiffs' 5-Hour ENERGY Marks, 5-Hour ENERGY Copyright, and 5-Hour

ENERGY Trade Dress, as well as Plaintiffs' slogans and other intellectual property belonging to

Plaintiffs.

136.    Defendants' actions constitute willful infringement of Plaintiffs' exclusive

rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.

137.    As a direct and proximate result of Defendants' conduct, Plaintiffs have

suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade

Dress and their reputation in the industry.  Unless Defendants's conduct is restrained, Plaintiffs

will continue to be irreparably harmed.

138.    Plaintiffs have no adequate remedy at law that will compensate for the

continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

139.    As a direct and proximate result of Defendants' conduct, Plaintiffs have

suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress

and other damages in an amount to be proved at trial.

- 22 -

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

## SIXTH CLAIM FOR RELIEF
## FEDERAL DILUTION OF MARK

140.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 139 of this Amended Complaint as if fully set forth herein.

141.    The 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

142.    Defendants are selling and/or have sold counterfeit products bearing the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress after such trademarks and trade dress became famous.

143.    By selling these counterfeit packaged products, Defendants, independently and in conspiracy with one another, have diluted and are diluting the distinctive quality of a mark or trade name owned by Plaintiffs in violation of 15 U.S.C. § 1125(c).

144.    Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.

145.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and their reputation in the industry.  Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

146.    Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

147.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and other damages in an amount to be proved at trial.

## SEVENTH CLAIM FOR RELIEF
## FEDERAL COPYRIGHT INFRINGEMENT

148.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 147 of this Amended Complaint as if fully set forth herein.

149.    Plaintiffs are the sole proprietor of all right, title and interest in and to the 5-Hour ENERGY Copyright.  As provided by 17 U.S.C. § 106, Plaintiffs have the exclusive right

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1  to, *inter alia*, reproduce, distribute, publicly display, and create derivative works from the 5-Hour

2  ENERGY Copyright.

3     150. Plaintiffs have registered their claim to copyright in the 5-Hour ENERGY

4  Copyright. Plaintiffs possess a copyright registration certificate for the 5-Hour ENERGY

5  Copyright.

6     151. Defendants, acting independently and in conspiracy with one another, have

7  directly infringed the 5-Hour ENERGY Copyright by unlawfully reproducing, transmitting,

8  distributing, publicly displaying, and creating derivative works based on the 5-Hour ENERGY

9  Copyright, all in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106.

10     152. Defendants, acting independently and in conspiracy with one another, have

11  also secondarily infringed the 5-Hour ENERGY Copyright by, *inter alia*, knowingly inducing

12  others to further disseminate the 5-Hour ENERGY Copyright without authorization to their

13  customers and/or other persons, and providing the site and facilities for known infringement of

14  the 5-Hour ENERGY Copyright and directly profiting from such infringement.

15     153. Upon information and belief, the foregoing actions of Defendants in

16  violation of Plaintiffs' rights have been willful and intentional, executed with full knowledge of

17  Plaintiffs' exclusive rights in the 5-Hour ENERGY Copyright, and in conscious disregard of

18  those rights.

19     154. Plaintiffs are entitled to recover from Defendants the profits that

20  Defendants obtained through infringements of the 5-Hour ENERGY Copyright as well as

21  Plaintiffs' damages from those infringements, or, at Plaintiffs' election, statutory damages

22  pursuant to 17 U.S.C. § 504.

23     155. Plaintiffs are also entitled to recover costs and attorney's fees from

24  Defendant pursuant to 17 U.S.C. § 505.

25     156. Defendants' infringements of Plaintiffs' copyright has caused, and, unless

26  restrained by this Court, will continue to cause, irreparable injury to Plaintiffs not fully

27  compensable in monetary damages. Plaintiffs are therefore entitled to preliminary and permanent

28  injunctions prohibiting Defendants from further infringing Plaintiffs' copyright.

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

## EIGHTH CLAIM FOR RELIEF
## STATE-LAW FALSE ADVERTISING
## (CAL. BUS. & PROF. CODE § 17500)

157.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 156 of this Amended Complaint as if fully set forth herein.

158.     Defendants, independently and in conspiracy with one another, with intent to induce the public to enter into commercial transactions, have made or disseminated, or caused to be made or disseminated, advertising statements concerning the counterfeit 5-Hour ENERGY® product which are untrue and misleading, and which were known, or which by the exercise of reasonable care should have been known, to be untrue or misleading, in violation of Cal. Bus. & Prof. Code § 17500.

159.     On information and belief, Defendants advertised, marketed and promoted the counterfeit 5-Hour ENERGY® products to the public, and/or to specific segments of the public, using Plaintiffs' 5-Hour ENERGY Marks, 5-Hour ENERGY Copyright, and 5-Hour ENERGY Trade Dress, as well as Plaintiffs' slogans and other intellectual property belonging to Plaintiffs.

160.     Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in the 5-Hour ENERGY Marks and the 5-Hour ENERGY Trade Dress.

161.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and their reputation in the industry.  Unless Defendants' conduct is restrained, Plaintiffs will continue to be irreparably harmed.

162.     Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

163.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY Trade Dress and other damages in an amount to be proved at trial.

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

## NINTH CLAIM FOR RELIEF
## STATE-LAW UNFAIR COMPETITION
## (CAL. BUS. & PROF. CODE § 17200)

164.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 163 of this Amended Complaint as if fully set forth herein.

165.    By manufacturing, selling, offering for sale, and/or distributing counterfeit 5-Hour ENERGY®, Defendants, independently and in conspiracy with one another, have committed unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200.

166.    Defendants' conduct is unlawful because it violates numerous state and federal statutes, including 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1114(1)(b); 15 U.S.C. § 1125(a)(1)(A); 15 U.S.C. § 1125(a)(1)(B); 15 U.S.C. § 1125(c); 17 U.S.C. § 106; Cal. Bus. & Prof. Code § 14250; Cal. Bus. & Prof. Code § 14247; and Cal. Bus. & Prof. Code § 17500.

167.    Defendants' conduct is unfair because it offends established public policy; is immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and without justification; and significantly threatens or harms competition.

168.    Defendants' conduct is fraudulent because it is likely to deceive reasonable consumers.

169.    Plaintiffs are entitled to an injunction restraining Defendants' unlawful, unfair, and fraudulent conduct, and to such orders as may be necessary to restore to Plaintiffs their interest in any money or property, real or personal, which may have been acquired by means of Defendants' unfair competition.

## TENTH CLAIM FOR RELIEF
## COMMON LAW UNFAIR COMPETITION

170.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 169 of this Amended Complaint as if fully set forth herein.

171.    In violation of the common law of the State of California and elsewhere, Defendants, independently and in conspiracy with one another, have unfairly competed with Plaintiffs by selling counterfeit 5-Hour ENERGY® products.

172.    As a direct and proximate result of Defendants' unfair competition,

FIRST AMENDED COMPLAINT
CASE NO. C 12 5523 WHA

5687613v.1

1    Plaintiffs have suffered irreparable harm to the valuable 5-Hour ENERGY Marks and 5-Hour

2    ENERGY Trade Dress and their reputation in the industry.  Unless Defendants' conduct is

3    restrained, Plaintiffs will continue to be irreparably harmed.

4           173.   Plaintiffs have no adequate remedy at law that will compensate for the

5    continued and irreparable harm they will suffer if Defendants' acts are allowed to continue.

6           174.   As a direct and proximate result of Defendants' unfair competition,

7    Plaintiffs have suffered damages to the valuable 5-Hour ENERGY Marks and 5-Hour ENERGY

8    Trade Dress and other damages in an amount to be proved at trial.

**ELEVENTH CLAIM FOR RELIEF**
**COMMON LAW UNJUST ENRICHMENT**

9

10          175.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 174

11   of this Amended Complaint as if fully set forth herein.

12          176.   By selling the counterfeit products bearing Plaintiffs' valuable trademarks

13   independently and in conspiracy with one another, Defendants have been unjustly enriched at

14   Plaintiffs' expense in violation of the common law of California and elsewhere.

15          177.   Under principles of equity, Plaintiffs are entitled to restitution and/or

16   disgorgement of Defendants' ill-gotten gains.

**PRAYER FOR RELIEF**

17

18   WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

19          A.     temporarily restraining, and preliminary and permanently enjoining, each

20   and every one of the Defendants and their subsidiaries, parents, affiliates, agents, servants,

21   employees, members, directors, officers and attorneys and those persons in active concert or

22   participation with them:

23               (i)    from using any of the 5-Hour ENERGY Marks, whether genuine or
                        counterfeit, or any marks confusingly similar thereto in connection
24                      with the manufacture, sale, offer for sale, distribution,
                        advertisement, or any other use of dietary supplements;
25

26               (ii)   from using any logo, trade name or trademark confusingly similar
                        to any of the 5-Hour ENERGY Marks which may be calculated to
27                      falsely represent or which has the effect of falsely representing that
                        the services or products of Defendants or of others are sponsored
28                      by, authorized by, or in any way associated with Plaintiffs;

- 27 -

1

(iii)  from infringing any of the 5-Hour ENERGY Marks;

(iv)  from infringing the 5-Hour ENERGY Copyright;

2

(v)  from otherwise unfairly competing with Plaintiffs in the manufacture, sale, offering for sale, distribution, advertisement, or any other use of 5-Hour ENERGY® dietary supplements;

3

4

(vi)  from falsely representing themselves as being connected with Plaintiffs or sponsored by or associated with Plaintiffs or engaging in any act which is likely to cause the trade, retailers and/or members of the purchasing public to believe that Defendants, or any of them, are associated with Plaintiffs;

5

6

7

(vii)  from using any reproduction, counterfeit, copy, or colorable imitation of any of the 5-Hour ENERGY Marks in connection with the publicity, promotion, sale, or advertising of dietary supplements;

8

9

10

(viii)  from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being 5-Hour ENERGY® dietary supplements and from offering such goods in commerce;

11

12

13

(ix)  from diluting any of the 5-Hour ENERGY Marks;

14

(x)  from destroying any records documenting the manufacture, sale, offer for sale, distribution, advertisement or receipt of any product purporting to be 5-Hour ENERGY®; and

15

16

(xi)  from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

17

18

B.  ordering that, within fifteen days after the entry and service of a temporary,

19

preliminary or permanent injunction, Defendants serve and file a written report under oath setting

20

forth in detail the manner and form in which they have complied with the injunction; and

21

C.  ordering that all infringing material be turned over, seized, impounded

22

and/or destroyed; and

23

D.  awarding to Plaintiffs punitive damages from each Defendant in an amount

24

to be ascertained at trial, but in no event less than $25 million; and

25

E.  awarding to Plaintiffs statutory or actual damages in an amount to be

26

ascertained at trial, and costs and attorney's fees; and

27

28

- 28 -

1          F.     awarding to Plaintiffs an accounting, and an award of: (i) all ill-gotten

2 profits from Defendants' manufacture, sale and/or distribution of the counterfeit 5-Hour

3 ENERGY® products; (ii) Plaintiffs' lost profits; and (iii) Plaintiffs' remedial costs; and

4          G.     awarding to Plaintiffs pre-judgment and post-judgment interest; and

5          H.     awarding such other and further relief to Plaintiffs as may be just, proper,

6 and equitable.

7

8 Dated: November 13, 2012

MURPHY, PEARSON, BRADLEY & FEENEY

9

10                   By _____

11                      Thomas P. Mazzucco

Bryan L. P. Saalfeld

12                      Attorneys for Plaintiff

INNOVATION VENTURES, LLC AND

13                      LIVING ESSENTIALS, LLC

14

15                      Of Counsel:

16                      Geoffrey Potter  - gpotter@pbwt.com

Christos G. Yatrakis - cyatrakis@pbwt.com

17                      Aron Fischer - afischer@pbwt.com

18                      1133 Avenue of the Americas

New York, New York  10036

19                      (212) 336-2000

*Attorneys for Plaintiffs Innovation Ventures LLC*

20                      *and Living Essentials LLC*

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

CASE NO. C 12 5523 WHA

5687613v.1

Exhibit 1

Int. Cl.: 5

Prior U.S. Cls.: 6, 18, 44, 46, 51, and 52

**United States Patent and Trademark Office**

Reg. No. 3,003,077
Registered Sep. 27, 2005

## TRADEMARK
### SUPPLEMENTAL REGISTER

# 5 HOUR ENERGY

INNOVATION VENTURES LLC (MICHIGAN LTD LIAB CO), DBA LIVING ESSENTIALS,
3141 OLD FARM LANE
WALLED LAKE, MI 48390

FOR: HOMEOPATHIC SUPPLEMENTS, PHARMACEUTICAL PREPARATIONS, NUTRITIONAL SUPPLEMENTS AND DIETARY SUPPLEMENTS THAT RELIEVE OR PREVENT FATIGUE , IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 6-0-2005; IN COMMERCE 6-0-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-434,496, FILED P.R. 6-14-2004; AM. S.R. 7-19-2005.

MARK T. MULLEN, EXAMINING ATTORNEY

# United States of America

## United States Patent and Trademark Office

## 5-HOUR ENERGY

**Reg. No. 4,004,225**

**Registered Aug. 2, 2011**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

FOR: ENERGY SHOTS, NAMELY, ENERGY DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SEC. 2(F).

SER. NO. 77-522,602, FILED 7-15-2008.

VERNA BETH RIRIE, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

# 5-hour ENERGY

**Reg. No. 4,104,670**

**Registered Feb. 28, 2012**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

FOR: NON-ALCOHOLIC DRINKS, NAMELY, ENERGY SHOTS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

OWNER OF U.S. REG. NOS. 3,003,077 AND 4,004,225.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF "5" AND "HOUR" SEPARATED BY A DASH AND DISPOSED ADJACENT TO "ENERGY" WHEREIN THE AFOREMENTIONED LITERAL ELEMENTS ARE DEPICTED IN A FIRST COLOR AND ORIENTED IN A SLANTED MANNER AND OUTLINED BY A SECOND COLOR THAT IS DIFFERENT THAN THE FIRST COLOR.

SEC. 2(F).

SER. NO. 85-317,129, FILED 5-10-2011.

CHRISTINA SOBRAL, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,116,951**

**Registered Mar. 27, 2012**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**



INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 3-23-2008; IN COMMERCE 3-23-2008.

FOR: NON-ALCOHOLIC DRINKS, NAMELY, ENERGY SHOTS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-23-2008; IN COMMERCE 3-23-2008.

OWNER OF U.S. REG. NOS. 3,003,077, 3,698,044, AND 4,004,225.

THE COLOR(S) BLACK, RED AND YELLOW IS/ARE CLAIMED AS A FEATURE OF THE MARK.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY EXTRA STRENGTH", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDING "5-HOUR ENERGY" IN BLACK OUTLINED IN YELLOW AND "EXTRA STRENGTH" IN YELLOW BELOW IT. A PERSON IN BLACK SIL-HOUETTE OUTLINED IN YELLOW IS SHOWN IN AN ATHLETIC POSE ADJACENT TO A BLACK, UNEVEN LANDSCAPE AND THE SKY IS DEPICTED IN TRANSITIONING COLORS FROM BLACK TO RED IN AN ARCUATE MATTER AS THE SKY MEETS THE LANDSCAPE.

SEC. 2(F) AS TO "5-HOUR ENERGY".

SER. NO. 85-132,099, FILED 9-17-2010.

EMILY CARLSEN, EXAMINING ATTORNEY

*David J. Kappos*

Director of the United States Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office



**Reg. No. 3,698,044**
Registered Oct. 20, 2009

**Int. Cls.: 5 and 32**

**TRADEMARK**
**PRINCIPAL REGISTER**

INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

FOR: ENERGY SHOTS, NAMELY, ENERGY DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

THE MARK CONSISTS OF A RUNNING MAN DESIGN.

SER. NO. 77-643,731, FILED 1-6-2009.

TRACY CROSS, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,120,360**

**Registered Apr. 3, 2012**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 6-0-2005; IN COMMERCE 6-0-2005.

FOR: NON-ALCOHOLIC DRINKS, NAMELY, ENERGY SHOTS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 6-0-2005; IN COMMERCE 6-0-2005.

OWNER OF U.S. REG. NOS. 3,003,077, 3,698,044, AND 4,004,225.

THE COLOR(S) RED, ORANGE, YELLOW, BLUE AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

THE MARK CONSISTS OF THE WORDING "5-HOUR ENERGY" DEPICTED IN BLACK OUTLINED IN YELLOW SET AGAINST THE DESIGN OF A SKY OVER A MOUNTAINOUS LANDSCAPE AND A PERSON IN BLACK SILHOUETTE IN AN ATHLETIC POSE ADJACENT TO THE FOREGROUND MOUNTAIN WHEREIN THE BACKGROUND MOUNTAINS ARE BLUE, THE FOREGROUND MOUNTAIN IS IN BLACK SILHOUETTE AND THE SKY IS DEPICTED IN COLORS THAT TRANSITION FROM RED TO ORANGE TO YELLOW AS THE SKY MEETS THE MOUNTAINS.

SEC. 2(F) AS TO "5-HOUR ENERGY".

SER. NO. 85-132,321, FILED 9-17-2010.

EMILY CARLSEN, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

Exhibit 2

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

Registration Number:

**TX 6-833-514**

Effective date of
registration:

March 27, 2008

---

### Title

Title of Work: Caution Label

### Completion/ Publication

Year of Completion: 2005

Date of 1st Publication: August 15, 2005     Nation of 1st Publication: United States

### Author

Author: Innovation Ventures, LLC

Author Created: Entire Text

Work made for hire: Yes

Citizen of: United States

### Copyright claimant

Copyright Claimant: Innovation Ventures, LLC

46570 Humboldt Drive, Novi, Michigan, 48377

Transfer Statement: By written contract

### Limitation of copyright claim

Previously registered: No

### Certification

Name: Marc Lorelli

Date: March 12, 2008

---

Correspondence: Yes

IPN#:

Registration #:   TX0006833514

Service Request #:   1-52013850

Brooks Kushman, PC
Marc Lorelli
1000 Town Center, 22nd Floor
Southfield, Michigan 48075

**CAUTION:** Contains about as much caffeine as a cup of coffee.  Limit caffeine products to avoid nervousness, sleeplessness, and occasionally rapid heartbeat.  You may experience a Niacin Flush (hot feeling, skin redness) that lasts a few minutes.  This is caused by Niacin (Vitamin B3) increasing blood flow near the skin.