IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATION VENTURES, LLC and LIVING ESSENTIALS, LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PITTSBURG WHOLESALE GROCERS, INC., et al.,<br><br>　　　　Defendants. | No. C 12-05523 WHA<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

### INTRODUCTION

In this seizure action involving allegedly counterfeit energy drinks, plaintiffs move for reconsideration of an order denying plaintiffs' motion for a preliminary injunction as to two defendants. For the reasons explained below, plaintiffs' motion is **DENIED**.

### STATEMENT

An October 26 *ex parte* seizure order granted plaintiffs authority to seize allegedly counterfeit bottles of 5-hour Energy from the defendants in this action, including defendants Pittsburg Wholesale Grocers, Inc., and Pacific Groservice, Inc. ("Pitco Foods"). On November 7, the Court held a hearing on the seizure order and found that plaintiffs had not carried their burden to show that preliminary relief was necessary against Pitco Foods (although such relief was maintained and granted as to *other* targets, by stipulation). A corresponding November 21 order memorialized the following rulings from the November 7 hearing: (i) Pitco Foods' acquisition of counterfeit products, if any, was unintentional; (ii) Pitco Foods cooperated with

the seizure action; (iii) Pitco Foods turned over the challenged products to plaintiffs; and (iv) plaintiffs have not established a reasonable likelihood that Pitco Foods will purchase or possess any counterfeit products in the future (Dkt. No. 75).

The November 21 order also confirmed that plaintiffs and their counsel had abused the Court's seizure and discovery orders by: (i) falsely representing that they had the authority to shut down two Pitco Foods stores; (ii) improperly demanding to look at Pitco Foods employees' driver's licenses when only law enforcement officers had such authority; (iii) violating the notice requirements in an expedited discovery order by giving only 24-hour's notice for depositions (*ibid.*).

As a result of these findings, the Court dissolved any continuing injunction against Pitco Foods, denied plaintiffs' request for preliminary relief against Pitco Foods, and granted Pitco Foods leave to take expedited discovery from plaintiffs' counsel and private investigators regarding abusive conduct in apparent violation of conditions placed on the original seizure order (*ibid.*). Plaintiffs were allowed to retain custody of the counterfeit goods.

Plaintiffs now move for reconsideration of the November 7 holding denying a preliminary injunction against Pitco Foods. Based on a preliminary review of plaintiffs' motion for leave to file for reconsideration, a November 14 order requested that the parties brief the issue of whether plaintiffs' motion for reconsideration violated Local Rule 7-9(c). For its part, Pitco Foods asks for an award of attorney's fees and costs associated with preparing its opposition to the motion for reconsideration.

**ANALYSIS**

Civil Local Rule 7-9(b) provides that a party seeking reconsideration must show:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

2

> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Local Rule 7-9(c) also contains a prohibition against repetition of prior arguments made to the court: "No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered. Any party who violates this restriction shall be subject to appropriate sanctions."

### 1. PLAINTIFFS' MOOTNESS ARGUMENT.

Plaintiffs first contend that the Court did not consider the "dispositive legal argument . . . that Pitco's voluntary cessation of the sale of counterfeits does not moot [plaintiffs'] request for injunctive relief" (Br. 10). Plaintiffs' motion for reconsideration on this basis is facially improper. Local Rule 7-9(b)(3) requires that (i) a legal argument for reconsideration be one which was previously before the court, but which the court failed to consider, and (ii) that it be dispositive. Plaintiffs' mootness contentions were never presented to the Court at or prior to the November 7 hearing. The closest plaintiffs came to this argument was in a bench memorandum filed the morning of the November 7 hearing. Even assuming that brief was "before the court" for the purposes of the local rule, plaintiffs' arguments therein were directed toward irreparable harm, and in particular whether there should be a presumption of irreparable harm. Plaintiffs did not squarely address the issue of mootness and its related case law.

At the November 7 hearing itself, moreover, the Court did not evaluate the issue of preliminary injunctive relief in the mootness context. Pitco Foods' cooperation with the seizure action was only one among several factors that weighed against a grant of preliminary relief.

Nor was plaintiffs' argument dispositive. The main point made by the judge was that plaintiffs had not shown a likelihood of a repeat violation and that, indeed, it was clear from the defense showing that the store had made an innocent error. Assuming, *arguendo*, that the evidence of Pitco Foods' voluntary cessation of the sale of allegedly counterfeit products were removed from consideration, there remained multiple sufficient bases for denial of plaintiffs'

3

request for preliminary relief. These included plaintiffs' failure to establish a likelihood of a repeat sales of counterfeit products by Pitco Foods, and plaintiffs' abuse of the seizure order.

Plaintiffs appear to manipulate matters to make it seem that the denial of the preliminary injunction was based on a finding of mootness after Pitco Foods voluntarily ceased its sales of allegedly counterfeit 5-hour Energy. Plaintiffs are incorrect — the Court made no finding as to mootness. The fact that the Court earlier granted temporary relief in the form of the seizure order does not automatically entitle plaintiffs to a preliminary injunction. Under the statute, plaintiffs bore the burden to demonstrate that preliminary relief was still necessary at the November 7 hearing. They failed to do so.

Plaintiffs also contend their "conduct of the seizures has little connection to. . . [plaintiffs'] entitlement to a preliminary injunction" (Br. 15). Again, this order disagrees. Unclean hands is one of the factors a court may consider when deciding to exercise its discretion to grant an injunction. 11A Wright, Miller, Kane *Federal Practice and Procedure* § 2946, at 111. "Generally the clean-hands doctrine may be invoked as a defense to a request for equitable relief only when plaintiff's improper conduct is directed at defendant and relates to the subject matter of the action" (*id.* at 110). The subject matter of this seizure action includes both the allegedly counterfeit goods and plaintiffs' abuse of the Court's assistance to seize the products in question prior to a final judgment. Plaintiffs abused the restrictions in the seizure order, and this factor properly weighed against the grant of a preliminary injunction.

### 2. PLAINTIFFS' ALLEGED NEW FACTS.

Plaintiffs next move for reconsideration on the grounds that purported "new facts have emerged since the hearing showing that Pitco's claims of innocence are untrue" (Br. 10). For such facts to provide a basis for reconsideration, plaintiffs must show that they either (i) existed at the time of the November 7 hearing, and despite reasonable diligence plaintiffs did not know of them at the time (Local Rule 7-9(b)(1)); or, (ii) these new facts emerged after the November 7 order (Local Rule 7-9(b)(2)). Neither basis for reconsideration exists here.

Plaintiffs rely on two email messages sent by a broker for Living Essentials to a Pitco Foods employee. Pitco Foods points out that one of plaintiffs' national account managers was

4

1 also copied on both emails (Opp. 7-8). These emails cannot fall within the ambit of Local Rule
2 7-9(b)(2) because they were dated September 25 and 27 and therefore in plaintiffs' possession as
3 of that date — more than a month prior to the November 7 hearing.

4 This order finds that plaintiffs did not exercise due diligence for the purposes of Local
5 Rule 7-9(b)(1). Although plaintiffs complain that they seized "gigabytes" of data from Pitco
6 Foods locations, they do not explain their failure to search their own files for relevant
7 correspondence. *Ex parte* seizure orders and preliminary injunctions are both extraordinary
8 relief. Email searches are routine. Plaintiffs should have performed a thorough search of their
9 own emails prior to seeking the assistance of the Court.

10 Nor can plaintiffs excuse their failure to locate this evidence from their own files on the
11 grounds that they "relied on the Order to Show Cause, which provided that Plaintiffs would have
12 until November 19, 2012 to submit a reply in response to Pitco's opposition" (Reply 2). Section
13 1116 places the burden squarely on plaintiffs to justify the seizure action at the time of the
14 hearing:

> The court shall hold a hearing . . . on the date set by the court in the order of seizure. . . . At such hearing the party obtaining the order shall have the burden to prove that the facts supporting findings of fact and conclusions of law necessary to support such order are still in effect. If that party fails to meet that burden, the seizure order shall be dissolved or modified appropriately.

18 15 U.S.C. 1116(d)(10)(A).

19 Consistent with plaintiffs' "shoot first, ask questions later" attitude that led to their abuse
20 of the seizure and discovery orders, plaintiffs contend that "[t]he Court should decline Pitco's
21 invitation to disregard the merits of Plaintiffs' motion. Reaching the merits entails granting the
22 motion" (Reply 2). Nevertheless, plaintiffs' motion is **DENIED**.

23 The merits of plaintiffs' argument primarily involves two emails and two declarations. In
24 one email sent on September 25, a broker rescinded a discount but offered to reinstate it if Pitco
25 Foods would take steps to reassure plaintiffs that it was selling authentic 5-hour Energy (Sprague
26 Decl. ¶ 7). These steps were permitting inspections and ordering directly from plaintiffs rather
27 than third-party distributors (*ibid.*). In the second email, the same broker stated on September 28
28 that no further discounts would be provided to Pitco Foods because plaintiffs could not verify

5

that the 5-hour Energy products sold by Pitco Foods were authentic (*id.* at ¶ 8). The first of the two declarations provided by plaintiffs' broker contains hearsay statements to the effect that a Pitco Foods manager falsely represented that their inventory of 5-hour Energy products was purchased from plaintiffs (Riffle Decl. ¶ 9). The second declaration from plaintiffs' broker contends that plaintiffs had serious concerns as to whether Pitco Foods' inventory contained counterfeits.

These allegedly new circumstances do not demonstrate that Pitco Foods "acted with, at a minimum, willful blindness and brazen mendacity in connection with the counterfeits at issue in this case" as plaintiffs contend (Reply 2). In an email sent on October 3, five days after the emails cited by plaintiffs, the same broker told Pitco Foods that the prior emails were a sales tactic: the broker believed that "by pulling the promo discount [he] could get [their] attention" (Sprague Decl. Ex. C at 2). The broker then unilaterally reinstated the prior discount and asked to set up a strategy meeting with Pitco Foods (*ibid.*). It appears from this email that plaintiffs themselves did not believe at that time that Pitco Foods was knowingly selling counterfeit 5-hour Energy products. Likewise, these emails do not constitute a basis to impute such a state of mind to defendants. This "evidence" is insufficient to support a preliminary injunction. Plaintiffs' attempts to explain away the October 3 email in the second declaration (submitted with their reply brief) do not alter this conclusion.

As for the declaration containing allegedly false statements by a Pitco Foods employee, plaintiffs' self-serving hearsay testimony does not demonstrate that Pitco Foods knew it might have been selling counterfeit products. This evidence would not have been sufficient to support the grant of a preliminary injunction at the November 7 hearing.

**3. SANCTIONS, ATTORNEY'S FEES, AND COSTS.**

At the November 7 hearing, plaintiffs' counsel submitted the matter and they lost. This motion is little more than a try for a second bite at the apple and an attempt to lard the record for appeal. The judge asks that the court of appeals be mindful of what was the actual record for decision when the further injunction was denied as to Pitco Foods. This new material should be ignored.

6

The question of sanctions and attorney's fees will await the trial so that the judge can have the benefit of a trial-developed record — or at least until after oral argument on Pitco Foods' co-pending motion for sanctions based on plaintiffs' conduct of the seizure action. For now, sanctions, fees, and costs are **DENIED** (without prejudice).

## CONCLUSION

Plaintiffs' motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 24, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE