Exhibit B

## EXCLUSIVE LICENSE AGREEMENT

This Exclusive License Agreement (this "*Agreement*"), effective as of August 2, 2012 (the "*Effective Date*"), is made by and between International IP Holdings, LLC, a Michigan limited liability company, with a principal place of business at of 39533 Woodward Ave, Ste 318, Bloomfield Hills, MI 48304 ("*Licensor*"), and Innovation Ventures, LLC, a Michigan limited liability company, with a principal place of business at **38955 Hills Tech Drive, Farmington Hills, Michigan 48331** ("*Licensee*"). Licensor and Licensee collectively are the "*Parties*," and individually each is a "*Party*."

## RECITALS

WHEREAS, Licensor is the owner of Intellectual Property (as defined below).

WHEREAS, Licensee is engaged in the business of developing, manufacturing, marketing, testing, selling, and distributing products ("Licensee's Business").

WHEREAS, in connection with Licensee's Business, Licensee desires to develop, manufacture, test, sell and distribute products related to and/or that utilize in some manner the Intellectual Property owned by Licensor.

WHEREAS, Licensor desires to license to Licensee, and Licensee desires to license from Licensor, the Intellectual Property.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, the Parties, intending to be legally bound, agree as follows:

## 1. DEFINITION

1.1. *"Intellectual Property"* means all Licensee Improvements (defined below), copyrights, patents or patent applications, including any and all related issued patents or pending United States, international, or non-United States applications, including any and all foreign counterparts, renewals, reissues, substitutions or additions, re-examinations, divisionals, continuations and continuations in part claiming priority thereto, trademarks, including, but not limited to, all trademarks, trade dress, service marks, trade names, domain names, brand names, corporate names, designs, logos, emblems, signs or insignia, slogans, other similar designations of source or origin and general intangibles of like nature, together with goodwill of the business, trade secrets, and know-how, each of which whether owned by Licensor, in part or in whole, or developed by Licensor or on Licensor's behalf, now or arising in the future, including but not limited to, those set forth or referenced in attached Schedules A and B. These schedules may be amended from time to time by the mutual written consent of the Parties.

1

#16420685 v1

## 2. LICENSE

2.1 Licensor hereby grants to Licensee, subject to the terms and conditions specified herein, an exclusive, worldwide license to the Intellectual Property including, but not limited to, the exclusive right to use, make, have made, import, offer to sell, and sell any product or process including the right to sublicense in the United States and throughout the world.

2.2 Licensee's use of the Intellectual Property shall in all respects conform to the current nature, characteristics and standard of quality established by Licensor or as, from time to time, communicated in writing to Licensee. Licensor shall have right of access through duly authorized representatives to Licensee's business premises at reasonable intervals and during ordinary business hours and to the extent necessary for the purpose of inspecting the methods employed by Licensee in utilizing the Intellectual Property in order to determine the nature, characteristics and standard of quality of the Intellectual Property are properly maintained.

2.3 Licensor hereby grants to Licensee the right to sue and recover for past, present and future infringement, or misappropriation, of Intellectual Property, and all corresponding rights in the Licensee's own name.

## 3. TERM AND TERMINATION OF AGREEMENT

3.1. This Agreement shall be effective as of the Effective Date and extend through December 31, 2012, and thereafter shall be extended automatically for successive periods of one year each, unless: a) Licensee sends written notice to Licensor by December 1 of the then-current year of its election to halt such automatic renewals, which notice shall be effective immediately upon sending, in which event the term will end on December 31 of the then-current year at midnight; or b) this Agreement is terminated as hereinafter provided. For each year that this Agreement is extended, Licensee shall pay Licensor additional annual payments for such year in the manner identified in Article 4 below.

3.2. The license granted in Article 2 above shall be irrevocable during the term (including any extensions) of this Agreement but shall terminate immediately upon the termination of this Agreement as provided herein.

3.3. This Agreement may be terminated upon mutual written agreement between the Parties.

3.4. If either Licensor or Licensee materially defaults in the performance of, or fails to be in compliance with, any material condition or covenant of this Agreement and any such default or noncompliance shall not have been remedied, or reasonable steps are not initiated to remedy the same to the non-defaulting Party's reasonable satisfaction, in either case within thirty (30) days after receipt by the defaulting Party of a written notice thereof from the other Party, the non-defaulting Party may terminate this Agreement at its option.

3.5. In the event that the Licensor files for bankruptcy under U.S. federal law, Licensee reserves the right to make any election available under Title 11 of the U.S. Code, including

but not limited to 11 U.S.C. §365(n). This provision shall not be treated as the Licensee making any current election under 11 U.S.C. §365(n).

3.6. The Licensee's interest in the Intellectual Property created pursuant to the license hereunder is neither transferable nor assignable and shall not be conveyed in whole or in part in any manner whatsoever, other than pursuant to a Permitted Assignment (as defined below). Any violation of or attempt to violate the foregoing sentence shall result in an automatic termination of this Agreement. For purposes of this Agreement, the term "Permitted Assignment" shall mean any transfer or assignment of the Licensee's interest in the Intellectual Property created pursuant to the license hereunder that arises pursuant to, or as a result of the exercise of remedies in connection with, the Licensee's 9½% Senior Secured Notes due 2019.

3.7. In the event Licensee's interest in Intellectual Property created pursuant to the license hereunder becomes subject to a judgment, charging order or similar event that arises from or out of a cause of action or otherwise by any person(s), group, entity, Governmental Entity (defined below) or the like, other than a Permitted Lien (as defined below), this Agreement shall terminate automatically. For purposes of this Agreement, the term "Permitted Lien" shall mean any judgment, charging order or similar event that arises pursuant to, or as a result of the exercise of remedies in connection with, the Licensee's 9½% Senior Secured Notes due 2019. For purposes of this Agreement, the term "Governmental Entity" shall mean any foreign, domestic, multinational, federal, territorial, state or local governmental authority, regulatory body, court, tribunal, commission, board, bureau, agency or instrumentality, or any regulatory, administrative or other department, agency or any political or other subdivision, department or branch of any of the foregoing.

3.8. Unless expressly provided to the contrary, Articles 1, 3, 5, 6, 7, 8, and 9 shall survive termination of this Agreement.

## 4. PAYMENT

4.1. Subject to the provisions herein, for the rights and privileges granted under this Agreement, Licensee will pay to Licensor an annual payment in the amount and manner identified in Schedule C which shall remain confidential and shall not be disclosed to any third party, except pursuant to an order from a court of competent jurisdiction presiding over a lawsuit involving claims/awards for damages, profits or rates for royalty, licensure, right to use or assignment pertaining to the Intellectual Property.

## 5. INTELLECTUAL PROPERTY AND UNLICENSED ACTIVITY

5.1. Each Party agrees to promptly inform the other Party in writing upon learning of any information concerning any actual, alleged or threatened infringement of the licensed Intellectual Property by a third party.

5.2. If infringement of Intellectual Property is alleged to have occurred during the term of this Agreement, Licensee shall have the right to sue the alleged infringer and Licensor shall

join the lawsuit if necessary to bring or sustain the suit. Licensee shall have sole control over the defense and settlement of any such suit using counsel of its choosing; provided that Licensee may not settle the suit if the settlement includes admissions of patent invalidity or other matters that adversely affect the viability of any of the Intellectual Property unless previously agreed to by the Parties. To the extent necessary, Licensor grants Licensee the right to join Licensor as a co-party to an infringement suit with respect to the rights hereunder.

5.3. In any negotiations, discussion, settlement or suit involving potential infringement of the licensed Intellectual Property, the Parties hereto agree to reasonably cooperate in all respects to have its employees testify when requested, and make available relevant records, papers, information, samples, specimens or other evidence.

5.4. All improvements, modifications and/or derivations by Licensee pertaining to and/or arising out of the Intellectual Property (hereinafter, "Licensee Improvements") shall be owned by Licensor. Licensee hereby agrees to assign, and hereby assigns, to Licensor all worldwide right, title, and interest in the Licensee Improvements. To the extent that any Licensee Improvements are copyrightable works, this Agreement shall constitute a Work-Made-For-Hire agreement between the Parties. Licensee agrees to execute an assignment for any Licensee Improvement at Licensor's request and to otherwise cooperate, execute and deliver any further instruments of transfer and to take any other action as Licensor may reasonably request to more effectively consummate the assignments and assumptions for Licensee Improvements to Licensor. Licensor, at its sole discretion, control and expense, may seek protection for any Licensee Improvement, including but not limited to filing and obtaining U.S., international, or non-U.S. intellectual property rights thereto.

5.5. If infringement of Intellectual Property is alleged to occur during the Term of this Agreement, Licensee shall have the right to sue for or defend against the alleged Intellectual Property infringement and Licensor shall be entitled but not obligated to join the lawsuit/proceeding if necessary to bring or sustain the suit. Licensee shall have sole control over the assertion, defense and settlement of any such lawsuit/proceeding using counsel of its choosing; provided that Licensee may not settle the lawsuit/proceeding if the settlement includes admissions of patent invalidity or other matters that adversely affect the viability of any of the Intellectual Property unless previously agreed to by the Parties. To the extent necessary, Licensor grants Licensee the right to join Licensor as a co-party to an infringement lawsuit/proceeding with respect to the rights hereunder. Where Licensee elects not to initiate or otherwise participate in a lawsuit/proceeding involving any claim of Intellectual Property infringement and to the extent legally possible, Licensor shall be entitled, but not obligated to, assert, defend, settle or otherwise resolve such a lawsuit/proceeding and Licensee shall provide Licensor with the appropriate information or assistance for such assertion, defense, settlement or resolution.

5.6. During the term of this Agreement, Licensor shall have the responsibility and bear the expense for payment of all government fees to maintain, renew and/or prosecute the Intellectual Property, including any legal fees incidental with payment of the government maintenance fees, renewal fees, and/or prosecution fees commensurate with this

4

responsibility, Licensor shall direct counsel of its choice to docket all maintenance, renewal and prosecution obligations to ensure timely payment, examination and/or prosecution thereof. Licensor shall notify Licensee within at least thirty (30) days before a maintenance fee, renewal and/or prosecution deadline in the event that Licensor opts not to maintain, renew and/or prosecute the Intellectual Property and Licensee, at its own expense may elect to pay the maintenance fee, renewal fee, and/or continue prosecution of any and all Intellectual Property.

## 6. CONFIDENTIALITY

6.1. Neither Party will disclose any of either Party's confidential and/or proprietary information to third parties, including this Agreement and the terms thereof, without the other Party's prior written consent except that either Party may disclose such confidential information to (a) regulatory authorities; and (b) those current and prospective investors, lenders, customers, sublicensees, representative and other third parties that have a legitimate business need to review such information and who are bound not to disclose or use such information. Confidential and/or proprietary information ("*Information*") shall mean information which is (a) disclosed in writing or other tangible form and clearly labeled "Confidential;" (b) disclosed orally and identified as confidential; or (c) commonly regarded as confidential and/or proprietary between the Parties.

6.2. Notwithstanding the foregoing, the obligations set forth in the preceding paragraph shall not apply to any portion of such Information which either Party can demonstrate (a) was generally available to the public at the time of disclosure or became generally available to the public through no wrongful act on the part of either Party; (b) was in the possession of either Party without restrictions on its use or disclosure prior to the date of disclosure otherwise than as the result of a breach of any legal obligation; (c) became known to either Party without restriction on its use or disclosure through a disclosure by sources other than the other Party who, to the receiving Party, were under no obligation of confidentiality with respect thereto; or (d) was independently developed by or on behalf of either Party without reference to or reliance upon Information.

6.3. If either Party is required, by law, regulation, or action of any governmental agency or authority, to disclose any Information, the Party may make such disclosure, subject to the following conditions: (a) prior to making any such disclosure, the Party shall provide the other Party with written notice of the proposed disclosure in order to provide the Party with sufficient opportunity to seek a protective order or other similar order preventing or limiting the proposed disclosure; and (b) the Party shall disclose Information only to the extent required by the protective order or other similar order, if such an order is obtained, and, if no such order is obtained, the Party shall disclose only the minimum amount of Information required to be disclosed in order to comply with the applicable law, regulation or action.

## 7. REPRESENTATION AND WARRANTIES

#16420685 v1

7.1. Licensor represents and warrants that as of the Effective Date there are no other patents, patent applications, registered copyrights, or trademarks (registered, filed, unfiled, or at common law) other than those listed in Schedules A and B. To the extent that such patents, patent applications, registered copyrights, and trademarks, exist but are not listed in Schedules A and B, they shall be considered to be subject to the present Agreement.

## 8. DISCLAIMER OF WARRANTIES, INDEMNIFICATION

8.1. THE LICENSE IS PROVIDED TO LICENSEE WITHOUT WARRANTY, EXPRESS OR IMPLIED, THAT THE USE OF LICENSED INTELLECTUAL PROPERTY WILL NOT INFRINGE ANY INTELLECTUAL PROPERTY OF A THIRD PARTY.

## 9. ADDITIONAL PROVISIONS

9.1. This Agreement contains the entire agreement of the Parties regarding the subject matter hereof and supersedes all prior agreements, understandings, and negotiations regarding the same. This Agreement may not be changed, modified, amended, or supplemented except by a written instrument signed by both Parties.

9.2. Neither the rights nor obligations under this Agreement may be assigned, nor the duties delegated, without the prior written consent of the other Party. Notwithstanding the foregoing, either Party may assign its rights and obligations hereunder, without the need for consent from the other Party, to any affiliate of the assigning Party, to any acquiror of substantially all of the assets and business of the assigning Party, or to any successor (within the meaning of the Securities Exchange Act of 1934) of the assigning Party; provided that the affiliate, acquiror or successor expressly agrees to be bound under this Agreement or is bound to this Agreement by operation of law.

9.3. If any part of this Agreement shall be held invalid and/or unenforceable, the remainder of the Agreement shall nevertheless remain in full force and effect.

9.4. Each Party hereto agrees to execute, acknowledge and/or deliver such further instruments, and to do all other acts, as may be necessary or appropriate in order to carry out the purposes and intent of this Agreement.

9.5. Neither Party shall be liable for any failure or delay in performance under this Agreement which is due in whole or in part directly or indirectly to any cause of any nature beyond the reasonable control of such Party.

9.6. All notices required by this Agreement shall be in writing. All notices and reports shall be sent by express courier to the Parties at the following addresses or such other addresses as may be designated in writing by the respective Parties:

#16420685 v1

To Licensor:

    International IP Holdings, LLC
    39533 Woodward Ave
    Suite 318
    Bloomfield Hills, MI 48304
    Attn: McDonald Hopkins PLLC

To Licensee:

    Innovation Ventures, LLC
    38955 Hills Tech Drive
    Farmington Hills, MI 48331
    Attn: Scott Henderson, President

Any notices shall be deemed given when delivered to the other Party.

9.7. Each Party shall bear its own expenses, if not expressly agreed otherwise in this Agreement.

9.8. Both Parties are independent contractors under this Agreement. Nothing contained in this Agreement is intended nor is to be construed so as to constitute Licensor and as partners or joint venturers with respect to this Agreement. Neither Party hereto shall have any express or implied right or authority to assume or create any obligations on behalf of or in the name of the other Party or to bind the other Party to any other contract, agreement, or undertaking with any third party.

9.9. The waiver by either Party of a breach of any provisions contained herein shall be in writing and shall in no way be construed as a waiver of any succeeding breach of such provision or the waiver of the provision itself.

9.10. This Agreement shall be construed and interpreted according to the laws of the state of Michigan. The Parties hereby submit to the exclusive jurisdiction of the State and Federal courts situated in Michigan. with regard to any disputes or claims under, arising out of or in connection with this Agreement.

9.11. This Agreement may be fully executed in more than one counterpart, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

*(Signature page follows)*

#16420685 v1

IN WITNESS WHEREOF, the duly authorized representatives of the Parties hereby execute this Exclusive License Agreement as of the Effective Date.

**International IP Holdings, LLC**

By: _____

Name: Manoj Bhargava

Title: Manager

Date: _____

**Innovation Ventures, LLC**

By: _____

Name: Manoj Bhargava

Title: Manager

Date: _____