1  William A. Markham, State Bar No. 132970
   Dorn Graham Bishop, State Bar No. 147994
2  Jason Eliaser, State Bar No. 248394
   LAW OFFICES OF WILLIAM MARKHAM, P.C.
3  550 West C Street, Suite 2040
   San Diego, CA 92101
4
   Tel:        (619) 221-4400
5  Fax:        (619) 224-3974
   E-mail:     wm@markhamlawfirm.com
6
   Attorneys for Dandee Company, Inc., Defendant and Third-Party Plaintiff.
7
                    **UNITED STATES DISTRICT COURT**
8
                  **NORTHERN DISTRICT OF CALIFORNIA**
9
                     **SAN FRANCISCO DIVISION**
10

| | | |
|---|---|---|
| 11 | INNOVATION VENTURES, LLC and LIVING ESSENTIALS, LLC, | Case No.      12-cv-5523-WHA |
| 12 | | |
| 13 | Plaintiffs, | FIRST AMENDED THIRD-PARTY COMPLAINT OF DANDEE |
| | Vs. | COMPANY, INC. FOR THE FOLLOWING |
| 14 | | CAUSES OF ACTION: |
| 15 | PITTSBURGH WHOLESALE | 1.   Intentional Misrepresentation |
| | GROCERS, INC. d/b/a PITCO FOODS, | 2.   Breach of Contract |
| 16 | *et al.*, | 3.   Tortious Interference (Contracts) |
| | | 4.   Tortious Interference (Fut. Relations) |
| 17 | Defendants. | 5.   False Labeling (Lanham Act) |
| | | 6.   False Advertising (Lanham Act) |
| 18 | _____ | 7.   Violations of Unfair Competition Law (California) |
| 19 | DANDEE COMPANY, INC., | 8.   Equitable Indemnification |
| 20 | Third-Party Plaintiff, | 9.   Equitable Contribution |
| 21 | Vs. | |
| 22 | WALID JAMIL; RAID ("BRIAN") JAMIL; JUSTIN SHAYOTA; | |
| 23 | MIDWEST WHOLESALE DISTRIBUTORS, INC.; JT | The Hon. William Alsup |
| 24 | WHOLESALE, INC.; JOE SHAYOTA; ADRIANA SHAYOTA; BAJA | Courtroom 8, 19th Floor |
| 25 | EXPORTING, LLC; TRADEWAY INTERNATIONAL, INC. (D/B/A | Complaint Filed:   October 26, 2012 |
| | | Trial Date:        Not set |
| 26 | BAJA EXPORTING); TRIMEXICO, INC.; MARIO RAMIREZ; CAMILO | |
| 27 | RAMIREZ; MCR INNOVATIONS AND PACKAGING, INC.; MCR | |
| 28 | PRINTING & PACKAGING CORP.; NAFTAUNITED.COM; JORGE | |

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.

1  NAVARRO; ONE STOP LABEL                )
   CORPORATION; LESLIE ROMAN;             )
2  DONNA ROMAN; FLEXOPACK;                )
   JUAN ROMERO GUTIERREZ;                 )
3  NUTRITION PRIVATE LABEL, INC.;         )
   and ADVANCED NUTRACEUTICAL             )
4  MANUFACTURING, INC.,                   )
                                          )
5              Third-Party Defendants.    )
                                          )
6  ─────────────────────────────────     )

7

8

9              **I.  CONCISE STATEMENT OF DANDEE'S THIRD-PARTY CLAIMS**

10         Third-Party Plaintiff Dandee Company, Inc. now asserts the following third-party claims

11  against several Third-Party Defendants, all of whom have been named as defendants in the related

12  litigation that Plaintiffs have initiated in the Eastern District of New York.[1]

13         Dandee was induced by fraud to purchase counterfeit versions of Plaintiffs' products, which

14  it then innocently resold to several Defendants in this case and to various defendants in a related

15  case underway in the Eastern District of New York.  In consequence, Dandee has suffered

16  substantial, worsening losses and is exposed to significant, possibly ruinous liability in this case and

17  in other anticipated civil proceedings that likely will be initiated by certain defendants in the New

18  York litigation.

19         Dandee therefore asserts the present third-party claims against the counterfeiters who dealt

20  directly with it, seeking relief from them for intentional misrepresentation, breach of contract, and

21  tortious interference with existing contracts and prospective economic advantage.  Dandee has also

22  asserted third-party claims against all of the participating counterfeiters for false labeling and false

23  advertising in violation of the Lanham Act and for related violations of California's Unfair

24  Competition Law.  In addition, Dandee seeks equitable indemnification and equitable contribution

25  from all of the Third-Party Defendants.

26  //

27  ─────────────────────────

28         [1]    Dandee erroneously filed "cross-claims" against these parties on January 23, 2013 on the mistaken assumption that it was permissible to file cross-claims against defendants in a related litigation. Dan-Dee has submitted the present pleading in order to correct its own error.

1    The Third-Party Defendants are necessary and indispensable parties in the present case,

2   which cannot be fairly adjudicated unless they are joined in it.  (Plaintiffs have already named all of

3   them as defendants in the related New York litigation.)  The joinder of these Third-Party Defendants

4   case will not divest the Court of jurisdiction, nor render the Northern District of California an

5   improper venue for this case.

6                                    **II.  THE PARTIES**

7        1.      Third-Party Plaintiff Dandee Company, Inc. ("Dandee") has been named as a

8   Defendant in the present case and has made its general appearance.  It maintains its business

9   headquarters in San Diego, California, and it is a corporation that is organized under the laws of

10  California.

11       2.      Third-Party Plaintiff Kevin Attiq (whose attorney has filed his third-party claims in

12  separate submission) has been named as a Defendant in the present case and has made his general

13  appearance.  Kevin Attiq maintains his domicile in San Diego, California.

14       3.      Third-Party Plaintiff Fadi Attiq (whose attorney has filed his third-party claims in

15  separate submission) Fadi Attiq maintains his domicile in San Diego, California.

16       4.      Third-Party Defendant Walid Jamil is an individual who maintains his principal

17  domicile in Michigan and also maintains a second residence in San Diego County, California.  Walid

18  Jamil otherwise maintains requisite minimal contacts with the State of California so as to be subject

19  to the long-arm jurisdiction of the state courts of California as well as the courts of this federal

20  judicial district.

21       5.      Third-Party Defendant Raid ("Brian") Jamil is an individual who maintains his

22  principal domicile in Michigan.  Brian Jamil maintains requisite minimal contacts with the State of

23  California so as to be subject to the long-arm jurisdiction of the state courts of California as well as

24  the courts of this federal judicial district.

25       6.      Third-Party Defendant Justin Shayota is an individual who maintains his domicile in

26  San Diego County, California.  Justin Shayota otherwise maintains requisite minimal contacts with

27  the State of California so as to be subject to the long-arm jurisdiction of the state courts of California

28  as well as the courts of this federal judicial district.

7.     Third-Party Defendant Midwest Wholesale Distributors, Inc. ("Midwest") is a corporation formed under the laws of Michigan that maintains its business headquarters and conducts its business operations in both Michigan and California, doing so at 5367 Falmouth Drive, Troy, Michigan 48085 and also at 2235 Avenida Costa Este #200, San Diego, California 92154. Midwest otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

8.     Third-Party Defendant Trimexico, Inc. (d/b/a Tri-Mex Distributors, Inc.) ("Trimex") is a corporation formed under the laws of California, but whose status is now suspended.  It maintains its business headquarters and conducts its business operations in California, doing so at 111 South 4th Street, El Centro, California 92443.  It also maintains other business offices at 33300 Van Dyke Avenue, Sterling Heights, Michigan 48312.  Tri-Mex otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

9.     Third-Party Defendant JT Wholesale, Inc.  ("JT Wholesale") is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 2235 Avenida Costa Este, No. 200, San Diego, California 92154.  JT Wholesale otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

10.     Third-Party Defendant Joe Shayota is an individual who maintains his domicile in San Diego County, California.  He otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

11.     Third-Party Defendant Adriana Shayota is an individual who maintains her domicile in San Diego County, California.  She otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

12.     Third-Party Defendant Baja Exporting, LLC is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 7625 Britannia Park Place, San Diego, California 92154.  Baja Exporting, LLC otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

13.     Third-Party Defendant Tradeway International, Inc. is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 7625 Britannia Park Place, San Diego, California 92154.  Tradeway International, Inc. otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

14.     Third-Party Defendant Mario Ramirez is an individual who maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

15.     Third-Party Defendant Camilo Ramirez is an individual who maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

16.     Third-Party Defendant MCR Innovations and Packaging, Inc. is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 15630 Timberidge Lane, Chino Hills, California 91709.  MCR Innovations and Packaging, Inc. otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

17.     Third-Party Defendant MCR Printing & Packaging Corp. is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 15630 Timberidge Lane, Chino Hills, California 91709.  MCR Printing & Packaging Corp. otherwise maintains requisite minimal contacts with the State of

1   California so as to be subject to the long-arm jurisdiction of the state courts of California as well as

2   the courts of this federal judicial district.

3          18.     Third-Party Defendant NaftaUnited.com is a corporation formed under the laws of

4   California that maintains its business headquarters and conducts its business operations in

5   California, doing so at 7920 Airway Road, Suite A1, San Diego, California, 92154. Nafta-

6   United.com otherwise maintains requisite minimal contacts with the State of California so as to be

7   subject to the long-arm jurisdiction of the state courts of California as well as the courts of this

8   federal judicial district.

9          19.     Third-Party Defendant Jorge Navarro is an individual who maintains requisite

10   minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the

11   state courts of California as well as the courts of this federal judicial district.

12          20.     Third-Party Defendant One Stop Label Corporation is a corporation formed under the

13   laws of California that maintains its business headquarters and conducts its business operations in

14   California, doing so at 1641 South Baker Avenue, Ontario, California 91761.  One Stop Label

15   Corporation otherwise maintains requisite minimal contacts with the State of California so as to be

16   subject to the long-arm jurisdiction of the state courts of California as well as the courts of this

17   federal judicial district.

18          21.     Third-Party Defendant Leslie Roman is an individual who maintains requisite

19   minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the

20   state courts of California as well as the courts of this federal judicial district.

21          22.     Third-Party Defendant Donna Roman is an individual who maintains requisite

22   minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the

23   state courts of California as well as the courts of this federal judicial district.

24          23.     Third-Party Defendant Flexopack is an unincorporated business entity that maintains

25   its business headquarters and conducts its business operations in California, doing so at 6450 Citrine

26   Street, Rancho Cucamonga, California 91701. The principal of Flexopack is Third-Party Defendant

27   Leslie Roman.  Flexopack otherwise maintains requisite minimal contacts with the State of

28   California so as to be subject to the long-arm jurisdiction of the state courts of California as well as

the courts of this federal judicial district.

24.     Third-Party Defendant Juan Romero Guittierez is an individual who maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

25.     Third-Party Defendant Nutrition Private Label, Inc. is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 3031 Main Street, Suite L, Chula Vista, California 91911. Nutrition Private Label, Inc. otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

26.     Third-Party Defendant Advanced Nutraceutical Manufacturing, Inc. is a corporation formed under the laws of California that maintains its business headquarters and conducts its business operations in California, doing so at 3031 Main Street, Suite L, Chula Vista, California 91911.  Advanced Nutraceutical Manufacturing, Inc. otherwise maintains requisite minimal contacts with the State of California so as to be subject to the long-arm jurisdiction of the state courts of California as well as the courts of this federal judicial district.

### III.  JURISDICTION AND VENUE

27.     **Subject-Matter Jurisdiction**.  Plaintiffs' first, second, fourth, fifth, and sixth causes of action arise under the Lanham Act, which is codified at 15 U.S.C. §§ 1051 *et seq.* This Court has original subject-matter jurisdiction over these causes of action under 15 U.S.C. §§ 1121 (a). Plaintiffs' seventh cause of action arises under 17 U.S.C. §§ 106 and 501.

28.     This Court may therefore properly exercise subject-matter jurisdiction over the above causes of action under 28 U.S.C. § 1331.  It has done so without objection from any Defendant, and on the contrary every named Defendant has been served and has either made a general appearance or otherwise declined to contest this Court's subject-matter jurisdiction over Plaintiffs' first, second, fourth, fifth, sixth, and seventh causes of action.

29.     All of Plaintiffs' remaining causes of action arise from the same transactions, occurrences, and "nucleus of operative fact" that have given rise to their first, second, fourth, fifth,

1   sixth, and seventh causes of action. This Court therefore has supplemental subject-matter jurisdiction

2   over Plaintiffs' remaining claims under 28 U.S.C. § 1367 (a), nor should the supplemental

3   jurisdiction be withheld under 28 U.S.C. § 1367 (c).

4         30.    Moreover, this Court can properly exercise its pendant subject-matter jurisdiction

5   over each of Plaintiffs' remaining causes of action because these claims arise from the same

6   transactions, occurrences, and "common nucleus of operative facts" that have given rise to their

7   primary causes of action, over which this Court has subject-matter jurisdiction under 28 U.S.C. §

8   1331, as pled above.  See *United Mine Workers of America v. Gibbs* (1966) 383 U.S. 715, 725, 86

9   S.Ct. 1130, 1138.

10        31.    Moreover, this Court has exercised subject-matter jurisdiction over Plaintiffs'

11  supplemental and pendant claims, and it has done so without objection from any Defendant, but on

12  the contrary every named Defendant has been served and has either made a general appearance or

13  otherwise declined to contest this Court's subject-matter jurisdiction over any of Plaintiffs' claims.

14        32.    Two of Dandee's third-party claims arise under 15 U.S.C. § 1125 (a), and this Court

15  has original subject-matter jurisdiction over these third-party claims under 15 U.S.C. § 1121 (a) and

16  28 U.S.C. § 1331.

17        33.    All of Dandee's remaining third-party claims arise from the same transactions,

18  occurrences, and "nucleus of operative fact" that have given rise to Plaintiffs' claims and its own

19  third-party claims under 15 U.S.C. § 1125 (a).  This Court therefore can properly exercise subject-

20  matter supplemental jurisdiction over the remaining third-party claims under 28 U.S.C. § 1367 (a),

21  nor should the supplemental jurisdiction be withheld under 28 U.S.C. § 1367 (c).  Moreover, this

22  Court can properly exercise pendant jurisdiction over these third-party claims under the doctrine of

23  "pendant jurisdiction."

24        34.    Moreover, all of Dandee's third-party claims are properly made under Rule 14 of the

25  Federal Rules of Civil Procedure, since all of them arise from the same transactions, occurrences and

26  "nucleus of operative fact" that underlie Plaintiffs' claims as well as the Elite Defendants' cross-

27  claims against Dandee.

28  //

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.                                                    -8-

35.     In addition, each Third-Party Defendant is an indispensable and necessary party to the present action within the meaning of Rules 19 and 20 of the Federal Rules of Civil Procedure. Joining these Third-Party Defendants to this case will not render the Northern District of California an improper venue this case.  All of the Third-Party Defendants named in this complaint maintain the requisite minimal contacts with the State of California; most of them maintain their legal domiciles in the State of California; and all of them committed acts and engaged in conduct that has had a significant effect upon entities and individuals who are located in this federal judicial district, including certain Defendants in this case.

36.     **Personal Jurisdiction**.  This Court has personal jurisdiction over each Third-Party Defendant named in this complaint.  Each of these parties conducts business and engages in commerce in this judicial district, and the Court can properly exercise personal jurisdiction over all of them under California's long-arm statute and in accordance with the constitutional doctrine of a defendant's "minimum contacts" with the forum state.

36.     **Venue**.  This Court is a proper venue for the present action because (1) certain Defendants maintain their domiciles in this judicial district; and (2) the Third-Party Defendants named in this complaint either conduct substantial commerce in this judicial district or participated in a course of dealing and business conduct that affected many individuals and entities that are located in this judicial district.  Moreover, this Court has already accepted jurisdiction of the case and initiated proceedings.

## IV.  COMMON ALLEGATIONS

37.     In May, 2012, Third-Party Defendant Walid Jamil, while acting on behalf of Third-Party Defendant Midwest Wholesale Distributors, Inc. ("Midwest"), visited Third-Party Plaintiff Dandee's offices in San Diego, California in order to confer with Third-Party Plaintiff Kevin Attiq, who is Dandee's the lead purchasing officer and one of its principals.  Walid Jamil did so in mid-May, 2012 in order to discuss what he characterized as a significant business opportunity for Dandee.  During this conversation, Walid Jamil stated and repeated the following specific matters to Kevin Attiq:

//

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.                                                    -9-

a.   That he (Walid Jamil) had long resided in Michigan;

b.   That the makers of the popular energy-shot called "5-Hour Energy" maintained all of their business and manufacturing operations in Michigan;

c.   That he (Walid Jamil) had developed an excellent professional and social relationship with an unnamed vice-president of the makers of 5-Hour Energy (who are Plaintiffs Innovation Ventures, LLP and Living Essentials, LLP);

d.   That Walid Jamil's company, Midwest, had been offered below-market rates for three varieties of 5-Hour Energy – the orange, berry, and extra-strength varieties;

e.   That Midwest could therefore sell these varieties of 5-Hour Energy to Dandee in substantial quantities at prices that were 10-12% lower than the going prices offered by other distributors and vendors of these products;

f.   That Midwest could not indefinitely offer these prices to Dandee, which should therefore take immediate advantage of this valuable commercial opportunity; and

g.   That Midwest might later be able to offer other varieties of 5-Hour Energy at reduced prices, but nothing was certain.

38.   To Kevin Attiq, Walid Jamil's statements seemed plausible and reasonable, not doubtful or suspicious.  Midwest's proposed discounts were very attractive, but not so low as to invite suspicion that it had improperly acquired the products in question, and Walid Jamil's explanation for these low prices did not seem absurd or inappropriate, since it often occurs that distributors can obtain products at below-market prices for a wide variety of reasons, one of which is that a distributor might enjoy a favored relationship with the supplier of a particular product.

39.   Kevin Attiq therefore relied justifiably on the above representations.

40.   In justified reliance on these representations, Kevin Attiq, while acting in his capacity as an officer of Dandee, decided in May, 2012 that Dandee would buy as much 5-Hour Energy as Midwest could supply to it at the discounted prices.  Kevin Attiq wielded the requisite authority within Dandee to cause it to take this decision, and he caused it to do so.  Kevin Attiq accordingly caused Dandee to agree to purchase from Midwest such quantities of orange, berry, and extra-strength berry 5-Hour Energy as Midwest could deliver to it at the promised discounted prices.

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.                                                    -10-

41.     In this manner, Dan-Dee justifiably relied on Walid Jamil's representations when agreeing to make these purchases.

42.     From May, 2012 until October, 2012, Dandee purchased approximately 3,130,920 bottles of 5-Hour Energy from Midwest at the discounted prices that Midwest offered it.  All of its purchases were for the above three varieties of 5-Hour Energy – orange, berry, and extra-strength berry.  In exchange for these products, Dandee paid to Midwest approximately $3,814,810.

43.     Dandee was induced to make these purchases by Walid Jamil's above-pled representations, and it would not have made them if Walid Jamil had not made these representations to its lead purchasing officer, Kevin Attiq.

44.     Acting in good faith and in its capacity as a reputable, capable wholesale distributor of food products and related offerings, Dandee sold substantially all of the above products to various customers, including (a) several of the other Defendants in the present action, and (b) many of the defendant parties in the case of *Innovation Ventures, LLC. v. Ultimate One Distributing Corp*. (E.D.N.Y., Case No. 12-cv-5354 (KAM) (RLM) (the "New York Action").

45.     On October 26, 2012, Plaintiffs obtained ex parte from this Court the following three orders:  (a) a Temporary Restraining Order (the "TRO"); (b) an Expedited Discovery Order; and (c) a Seizure Order, which was issued under 15 U.S.C. § 1116 (d) (1).

46.     On October 29, 2012, Plaintiffs executed the Seizure Order at Dandee's premises and at the same time served Dandee as well as Kevin Attiq and Fadi Attiq with the TRO, the Expedited Discovery Order, the Complaint, the Summons, and related papers.

47.     When serving these papers and enforcing the Seizure Order, Plaintiffs' sprawling entourage caused so much commotion and confusion at Dandee's place of business that Dandee and its principal officers, Kevin Attiq and Fadi Attiq, did not have time on the spot to read the court papers carefully.  Shortly afterwards, they reviewed the papers and learned from them that Plaintiffs alleged that all of the 5-Hour Energy that Midwest sold to Dandee had been counterfeited and was not authentic 5-Hour Energy.

48.     Shortly thereafter, Dandee, Kevin Attiq, and Fadi Attiq learned from discovery proceedings in the New York Action that Walid Jamil, Justin Shayota, Midwest, JT Wholesale, and

Trimex operated an elaborate assembly and packing facility in San Diego, California at which they placed counterfeit labels onto counterfeit bottles of the above three varieties of 5-Hour Energy, printed lot numbers and expiration dates onto these bottles, packed the bottles into boxes, placed the boxes into master crates, placed the master crates into pallets, and loaded the pallets onto trucks for delivery to Dandee and other destinations.

49.     On the basis of these matters, Plaintiffs have instituted and maintained the present action as well the as the New York Action.

50.     In this case, Plaintiffs have asserted claims against Dandee, Kevin Attiq and Fadi Attiq for trademark infringement (several counts), providing false descriptions and false designations of origin, false advertising, trademark dilution, copyright infringement, and various related claims that arise under California law.

51.     In addition, Dandee apprehends that certain Defendants in this action and various defendant parties in the New York Action will assert claims against it for equitable indemnification, equitable contribution, and related wrongs.  One group of Defendants in this case has already asserted very ambitious cross-claims against Dandee, including cross-claims that arise under the RICO Act for which they seek treble damages.

52.     Owing to the pendency and notoriety of the present case and the related New York Action, many of Dandee's customers are no longer willing to make purchases of any kind from it, and many others purchase products from it only apprehensively and in lesser quantities than they previously used to do.

53.     The present discounted value of Dandee's losses in this matter, which have been proximately caused by the above-pled chain of events, reaches into the millions of dollars.

54.     In addition, Dandee paid approximately $3,814,810 to Midwest for product that was apparently counterfeit and therefore without any commercial value.  Midwest thus acquired this money from Dandee by fraud.

55.     In addition, Dandee has suffered a ruinous collapse of its business goodwill, which it had developed over many years by its professionalism, reasonableness, punctuality, and astute commercial acumen.

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.                                        -12-

56.     In addition, Dandee has suffered other damages because Midwest induced it by fraudulent misrepresentations to make the above purchases, which in turn have led to the above-pled harm and losses.

57.     Moreover, Dandee and its two principal officers must defend themselves in the present litigation.

58.     From its limited review of early discovery proceedings in the New York Action, Dandee now understands that Third-Party Defendants Walid Jamil, Brian Jamil, Justin Shayota, and Midwest colluded to prepare and ship the above-pled counterfeit products:  Justin Shayota and Brian Jamil appear to have taken their instructions from Walid Jamil and to have acted in concert with him, and all three men used Midwest as well as Third-Party Defendants JT Wholesale, Inc.  ("JT Wholesale") and TriMex Distributors, Inc. ("Trimex") as the labeling, packaging, and supply outlet for the above-pled counterfeit products, which they shipped on a mass scale to Dandee's warehouse in San Diego, California as well as to other destinations.

59.     Moreover, Walid Jamil, Brian Jamil, and Justin Shayota used Midwest, JT Wholesale and TriMex as alter-ego instrumentalities by which they conducted their fraudulent enterprise.  None of these companies segregated its assets or operations from the personal affairs of the principals; none of them observed the ordinary corporate forms; none was sufficiently capitalized for its (illegitimate) commercial purposes; and all were used interchangeably and without regard to a separation of tasks or division of work in order to conduct an elaborate, substantial counterfeiting operation – one that dumped millions of counterfeit products on Dandee, which was induced by Walid Jamil's above fraudulent misrepresentations to purchase them and resell them, thereby involving itself and its principals in ruinous consequences and losses.

60.     On information and belief, each of the remaining Third-Party Defendants took and/or ratified actions or omitted to take necessary precautions that had the foreseeable effect of exposing Dandee to the above-pled harm and losses.

61.     Moreover, Dandee's preliminary review of early discovery proceedings in the New York Action reveals the following.  Third-Party Defendants Mario Ramirez, Camilo Ramirez, MCR Innovations and Packaging, Inc., MCR Printing & Packaging Corp., Jorge Navarro, One Stop Label

Corporation, Leslie Roman, Donna Roman, Flexopack, Juan Romero Gutierrez, Nutrition Private Label, Inc. and Advanced Nutraceutical Manufacturing, Inc. appear to have performed specific roles in the supply chain by which Midwest acquired the counterfeit liquid, bottles, labels, boxes, master crates, imprints and other items that it used to assemble, label, imprint, package, and ship the above-pled counterfeit products.  These Third-Party Defendants therefore appear to have conspired with Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and Trimex in order to defraud and harm Dandee and its two principal officers, Kevin Attiq and Fadi Attiq.

62.     More specifically, early discovery proceedings have tended to confirm the following points:

(a)     Mario Ramirez, Camilo Ramirez, MCR Innovations and Packaging, Inc., MCR Printing & Packaging Corp., and NaftaUnited.com designed and made the counterfeit master crates and smaller boxes used to hold the counterfeit bottles of 5-Hour Energy, and to this end they took elaborate measures to ensure that these crates and boxes exactly resembled Plaintiffs' own crates and boxes (including counterfeit lot numbers and expiration dates);

(b)     Jorge Navarro, One Stop Label Corporation, Leslie Roman, Donna Roman, and Flexopack prepared the counterfeit labeling for the counterfeit bottles of 5-Hour Energy;

(c)     Working with Leslie Roman and Donna Roman, Juan Romero Gutierrez, Nutrition Private Label, Inc. and Advanced Nutraceutical Manufacturing, Inc. made the counterfeit beverage and poured it into counterfeit bottles after procuring counterfeit bottles and bottle caps from suppliers located in Mexico;

(d)     Working with Walid Jamil and Justin Shayota, Juan Romero Gutierrez and his companies, Nutrition Private Label, Inc., and Advanced Nutraceutical Manufacturing, Inc., delivered the filled counterfeit bottles to Midwest's warehouse in San Diego, California; and

(e)     At Midwest's warehouse, Midwest used "shrink-wrapping" in order to apply the counterfeit labels onto the counterfeit bottles and a video jet-printer in order to stamp fraudulent lot numbers and expiration dates on the bottles.  Thereafter, Midwest packed these bottles into the counterfeit twelve-pack boxes, and placed counterfeit twelve-packs into counterfeit master crates, each of which held eighteen twelve-packs, so that each master crate held 216 counterfeit bottles.

Midwest then placed the master crates into pallets, which it then loaded onto trucks for delivery to Dandee's warehouse and other destinations.  In this manner, Midwest shipped millions of bottles of counterfeit versions of the orange, berry and extra-strength berry varieties of 5-Hour Energy.

63.    It remains unclear, however, whether Walid Jamil or others deceived some of the above Third-Party Defendants to provide their respective services without positive knowledge that they were abetting an unlawful, fraudulent counterfeiting scheme.  Dandee preserves its right to amend this complaint upon conducting discovery and obtaining further information on this point as to Third-Party Defendants Mario Ramirez, Camilo Ramirez, MCR Innovations and Packaging, Inc., MCR Printing & Packaging Corp., NaftaUnited.com, Jorge Navarro, One Stop Label Corporation, Leslie Roman, Donna Roman, Flexopack, Juan Romero Gutierrez, Nutrition Private Label, Inc. and Advanced Nutraceutical Manufacturing, Inc.  It appears likely that some or all of these Third-Party Defendants acted in complicity with Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and Trimex in order to produce counterfeit products, which Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and Trimex then fraudulently induced Dandee to purchase and resell to various customers around the country.

64.    In the New York Action, moreover, Plaintiffs have alleged the following points, some of which are partly supported by evidence adduced during early discovery proceedings in the New York Action:

(a)    Third-Party Defendants Joe Shayota, Adriana Shayota, Baja Exporting, LLC, and Tradeway International, Inc. funded, organized, and coordinated the entire counterfeiting operation;

(b)    Third-Party Defendants Joe Shayota, Adriana Shayota, Baja Exporting, LLC, and Tradeway International, Inc. received most of its illicit profits from the counterfeiting operation; and

(c)    Third-Party Defendants Joe Shayota, Adriana Shayota, Baja Exporting, LLC, and Tradeway International, Inc. prevailed on Walid Jamil to induce Dandee to make the above purchases so that their principal business, Tradeway International, Inc. d/b/a Baja Exporters, would not be directly associated with significant sales of the counterfeit products in regular distribution channels across the United States.

//

65.     If Plaintiffs' above allegations are correct, it means that Third-Party Defendants Joe Shayota, Adriana Shayota, Baja Exporting, LLC, and Tradeway International, Inc. conspired with Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and Trimex in order to defraud and harm Dandee and its two principal officers, Kevin Attiq and Fadi Attiq.

66.     Dandee anticipates that at a later stage of these proceedings it will seek leave to supplement and clarify its general allegations and below third-party claims.

## V.  FIRST CAUSE OF ACTION
### (INTENTIONAL MISREPRESENTATION)
### (AGAINST WALID JAMIL, BRIAN JAMIL, JUSTIN SHAYOTA, MIDWEST, JT WHOLESALE, AND TRIMEX)

67.     Dandee re-pleads and incorporates by reference each of the preceding allegations.

68.     Walid Jamil made the above-pled misrepresentations to Dandee's lead purchasing officer, Kevin Attiq, and he did so to induce Dandee to purchase the above-pled counterfeit products.  When making these representations, he was acting on his own behalf and also on behalf of his alter-ego entities, which he beneficially owned and controlled, and which were Midwest, JT Wholesale, and Trimex.

69.     When making these misrepresentations to Dandee, Walid Jamil knew that they were materially false.

70.     As pled above, Walid Jamil made these misrepresentations to Dandee's lead purchasing officer, Kevin Attiq, in mid-May, 2012 during a visit that he paid to Dandee's offices in San Diego, California.  The misrepresentations were as follows:

    a.     That he (Walid Jamil) had long resided in Michigan;

    b.     That the makers of the popular energy-shot called "5-Hour Energy" maintained all of their business and manufacturing operations in Michigan;

    c.     That he (Walid Jamil) had developed an excellent professional and social relationship with an unnamed vice-president of the makers of 5-Hour Energy (who are Plaintiffs Innovation Ventures, LLP and Living Essentials, LLP);

    d.     That Walid Jamil's company, Midwest, had been offered below-market rates for three varieties of 5-Hour Energy - the orange, berry, and extra-strength varieties;

1         e.     That Midwest could therefore sell these varieties of 5-Hour Energy to Dandee in

2              substantial quantities at prices that were 10-12% lower than the going prices offered

3              by other distributors and vendors of these products;

4         f.     That Midwest could not indefinitely offer these prices to Dandee, which should

5              therefore take immediate advantage of this valuable commercial opportunity; and

6         g.     That Midwest might later be able to offer other varieties of 5-Hour Energy at reduced

7              prices, but nothing was certain.

8         71.     The truth of these matters, however, proved to be the following:  Although Walid

9    Jamil had long resided in Michigan, and although the makers of 5-Hour Energy maintain their

10   headquarters in Michigan, neither Walid Jamil nor any of his companies obtained below-market

11   prices for 5-Hour Energy products from its manufacturers or any other authorized supplier.

12   Moreover, Midwest made substantial sales of the above-three varieties of 5-Hour Energy to Dandee

13   at below-market prices, but it did so only because it was knowingly selling counterfeit versions of

14   these products, which it had acquired for a small fraction of the current market prices for the

15   authentic products.

16        72.     For these reasons, Walid Jamil's above misrepresentations were materially false and

17   misleading, and Walid Jamil knew that they were materially false and misleading when he made

18   them.

19        73.     Walid Jamil made these misrepresentations in order to induce Dandee to agree to

20   purchase as much of Midwest's counterfeit versions of 5-Hour Energy as Midwest could supply to

21   it.

22        74.     In justified reliance on these misrepresentations, Dandee agreed in mid-May, 2012 to

23   purchase as much of Midwest's counterfeit versions of 5-Hour Energy as Midwest could supply to

24   it.

25        75.     Thereafter, and on the basis of the above agreement, Dandee paid approximately

26   $3,814,810 to Midwest in exchange for approximately 3,130,920 bottles of 5-Hour Energy, paying

27   the sums in exchange for installments received from May, 2012 to October, 2012.

28   //

76.     In fact, the products for which Dandee made these payments were worthless counterfeits.  Dandee sold substantially all of them to several of the other Defendants in this case as well as to many of the Defendants in the New York Action, doing so without knowledge that it was selling counterfeit products to its customers.

77.     In consequence of the foregoing, Plaintiffs have asserted claims against Dandee, Kevin Attiq, and Fadi Attiq for trademark infringement (several counts), false labeling, false advertising, trademark dilution, copyright infringement, and related claims that arise under California law.

78.     In addition, Dandee apprehends that certain Defendants in this action and various defendant parties in the New York Action will shortly assert claims against it for equitable indemnification, equitable contribution, and related wrongs.  One group of Defendants in this case has already asserted very ambitious cross-claims against Dandee, including cross-claims that arise under the RICO Act for which they seek treble damages.

79.     Owing to the pendency and notoriety of the present case and the related New York Action, many of Dandee's customers are no longer willing to make purchases of any kind from it.

80.     In addition, Dandee paid approximately $3,814,810 to Midwest for product that proved to be counterfeit and therefore without any commercial value.  Midwest thus acquired this money from Dandee by fraud.

81.     In addition, Dandee has suffered a ruinous collapse of its business goodwill, which it had developed over many years by its professionalism, reasonableness, punctuality, and astute commercial acumen.

82.     In addition, Dandee has suffered other damages because of the above-pled fraud upon its business, and among other things Dandee and its two principal officers must defend themselves in the present litigation.

83.     The present discounted value of Dandee's losses in this matter, which have been proximately caused by the above-pled chain of events, reaches into the millions of dollars.

84.     In this matter, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and Trimex acted in concert with Walid Jamil in order to mislead and defraud Dandee into making the above

1   purchases and reselling their counterfeit products.  Each of them consciously played a role in their

2   common effort to mislead Dandee about the above-pled matters, and each profited from the

3   counterfeiting scheme and by luring Dandee, a well-recognized wholesaler, to act as the inadvertent

4   distributor of their counterfeit products.

5          85.    In proximate consequence of this conduct, Dandee has suffered proximate losses that

6   reach into the millions.

7          86.    In this matter, Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and

8   Trimex each acted with fraud, malice and/or oppression of the kind that subjects each of them to

9   liability for punitive damages under Section 3294 of the California Civil Code.

10          WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief,

11   which appears below.

12                          **VI.  SECOND CAUSE OF ACTION**
                            **(BREACH OF ORAL CONTRACT)**
13                          **(AGAINST MIDWEST)**

14          87.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

15          88.    In mid-May, 2012, Dandee and Midwest formed an oral contract by which Dandee

16   agreed to purchase as much of the orange, berry, and extra-strength berry varieties of 5-Hour Energy

17   as Midwest could supply to it.

18          89.    Thereafter, and on the basis of the above agreement, Dandee paid approximately

19   $3,814,810 to Midwest in exchange for approximately 3,130,920 bottles of 5-Hour Energy, paying

20   the sums in installments in exchange for periodic deliveries received from May, 2012 to October,

21   2012.

22          90.    By timely paying for all of the products that Midwest shipped to it, Dandee fully

23   performed all of its obligations under the oral contract that it made with Midwest.

24          91.    Midwest breached the contract by delivering to Dandee worthless counterfeit

25   products.

26          92.    In proximate consequence of Midwest's breach, Dandee has suffered proximate

27   losses that reach into the millions and are more fully described above.

28   //

1    WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief,

2   which appears below.

3

4                          **VII.  THIRD CAUSE OF ACTION**
                   **(TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS)**
                     **(AGAINST WALID JAMIL, BRIAN JAMIL, JUSTIN**
5                  **SHAYOTA, MIDWEST, JT WHOLESALE, AND TRIMEX)**

6         93.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

7         94.    By the above-pled conduct, which is wrongful under the Lanham Act and various

8   other laws of the United States and California, Walid Jamil, Brian Jamil, Justin Shayota, Midwest,

9   JT Wholesale, and Trimex have foreseeably interfered with, impaired, and/or incited the termination

10  of existing contracts and contractual dealings between Dandee and its established customers, who

11  would otherwise have continued to make ongoing purchases from it, but who have either stopped

12  doing so entirely or sharply limited their purchases while looking to make permanent arrangements

13  with another wholesaler.

14        95.    At all relevant times, Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT

15  Wholesale, and Trimex understood that their conduct likely would have the above-pled detrimental

16  and potentially ruinous effect on Dandee's business.

17        96.    Dandee has suffered proximate losses in consequence of the foregoing.

18        97.    In this matter, Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and

19  Trimex have acted with fraud, malice and/or oppression of the kind that subjects each of them to

20  liability for punitive damages under Section 3294 of the California Civil Code.

21        WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief,

22  which appears below.

23

24                         **VIII.  FOURTH CAUSE OF ACTION**
             **(TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS)**
                     **(AGAINST WALID JAMIL, BRIAN JAMIL, JUSTIN**
25                 **SHAYOTA, MIDWEST, JT WHOLESALE, AND TRIMEX)**

26        98.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

27        99.    By the above-pled conduct, which is wrongful under the Lanham Act and various

28  other laws of the United States and California, Walid Jamil, Brian Jamil, Justin Shayota, Midwest,

1    JT Wholesale, and Trimex have foreseeably interfered with, impaired, and/or incited the

2    abandonment of prospective business dealings and future contracts between Dandee and prospective

3    customers, who otherwise would have made substantial purchases from it for the foreseeable future.

4           100.    At all relevant times, Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT

5    Wholesale, and Trimex understood that their conduct might foreseeably expose Dandee's business to

6    the losses pled above.

7           101.    Dandee has suffered proximate losses in consequence of the foregoing.

8           102.    In this matter, Walid Jamil, Brian Jamil, Justin Shayota, Midwest, JT Wholesale, and

9    Trimex have acted with fraud, malice and/or oppression of the kind that subjects each of them to

10   liability for punitive damages under Section 3294 of the California Civil Code.

11          WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief,

12   which appears below.

13                          **IX.  FIFTH CAUSE OF ACTION**
                       **(FALSE LABELING IN VIOLATION OF THE LANHAM ACT)**
14                          **(AGAINST ALL THIRD-PARTY DEFENDANTS)**

15          103.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

16          104.    By their above-pled roles in the supply chain of the counterfeited products, each

17   Third-Party Defendant has used words, terms, names, symbols, and/or devices, as well as

18   combinations of some or all of these items, in order set forth the following on the above

19   counterfeited products:  False designations of origin; false or misleading descriptions of fact; and/or

20   false or misleading representations of fact (collectively, "False Trade Statements").

21          105.    The False Trade Statements have caused confusion, mistake, and deception among

22   buyers of the counterfeited products and all purchasers of 5-Hour Energy products as to each Third-

23   Party Defendant's affiliation, connection, or association with Plaintiffs and their authorized

24   distributors.

25          106.    The False Trade Statements have also caused confusion, mistake, and deception

26   among buyers of the counterfeited products and all purchasers of 5-Hour Energy products as to the

27   origin, sponsorship, or approval by another of the above-pled counterfeit goods.

28   //

107.   By setting forth the False Trade Statements on the counterfeit goods, and as pled above in this complaint, each Third-Party Defendant has contributed to the proximate harm that Dandee has suffered because it was deceived into purchasing the above-pled counterfeit goods from Midwest.

108.   Each Third-Party Defendant has therefore committed an actionable wrong under 15 U.S.C. § 1125 (a) (1) (A) and is liable to Dandee for such remedies as are afforded it under 15 U.S.C. §§ 1117 and 1125 (a) (1).

WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief, which appears below.

## X.  SIXTH CAUSE OF ACTION
### (FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT)
### (AGAINST ALL THIRD-PARTY DEFENDANTS)

109.   Dandee re-pleads and incorporates by reference each of the preceding allegations.

110.   By their above-pled roles in the supply chain of the counterfeited products, each Third-Party Defendant has used words, terms, names, symbols, and/or devices, as well as combinations of some or all of these items, in order set forth the following on the above counterfeited products:  False designations of origin; false or misleading descriptions of fact; and/or false or misleading representations of fact (collectively, "False Trade Statements").

111.   The False Trade Statements have been used in commercial advertising or promotion and have misrepresented the nature, characteristics, qualities, or geographic origin of the above-pled counterfeit goods.

112.   By so acting, each Third-Party Defendant has contributed to the proximate harm that Dandee has suffered because it was deceived into purchasing the above-pled counterfeit goods from Midwest.

113.   Each Third-Party Defendant has therefore committed an actionable wrong under 15 U.S.C. § 1125 (a) (1) (B) and is liable to Dandee for such remedies as are afforded it under 15 U.S.C. §§ 1117 and 1125 (a) (1).

WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief, which appears below.

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.                                                    -22-

## XI.  SEVENTH CAUSE OF ACTION
### (VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW)
### (AGAINST ALL THIRD-PARTY DEFENDANTS)

114.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

115.    By the above-pled conduct, and in particular by their several roles in the supply chain by which the above-pled counterfeit products were manufactured, processed, labeled, imprinted, boxed, crated, and shipped, each Third-Party Defendant has engaged in unfair business practices in violation of California's Unfair Competition Law, which is codified at Sections 17200 *et seq.* of the California Business & Professions Code.  Their above-pled conduct has caused proximate injury to Dandee's business and continues to do so.

116.    This Court has authority under Section 17203 of the California Business & Professions Code to "make such orders as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief, which appears below.

## XII.  EIGHTH CAUSE OF ACTION
### (EQUITABLE INDEMNIFICATION)
### (AGAINST ALL THIRD-PARTY DEFENDANTS)

117.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

118.    By their above-pled conduct and failure to take appropriate acts and precautions, each Third-Party Defendant has inequitably and unjustly exposed Dandee and its principals, Kevin Attiq and Fadi Attiq, to losses that are ongoing.  Among other things, all three of them must defend themselves in the present litigation and might be obliged to pay settlement sums or judgments.  In addition, Dandee has suffered the other losses and harm that are pled more fully above.

119.    For the sake of equity, and as a matter of substantial justice in this matter, the Court should order each Third-Party Defendant to pay full equitable indemnification to Dandee, Kevin Attiq and Fadi Attiq so far as the law allows.

WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief, which appears below.

### XIII.  NINTH CAUSE OF ACTION
### (EQUITABLE CONTRIBUTION)
### (AGAINST ALL THIRD-PARTY DEFENDANTS)

120.    Dandee re-pleads and incorporates by reference each of the preceding allegations.

121.    By their above-pled conduct and failure to take appropriate acts and precautions, each Third-Party Defendant has inequitably and unjustly exposed Dandee and its principals, Kevin Attiq and Fadi Attiq, to losses that are ongoing.  Among other things, all three of them must defend themselves in the present litigation and might be obliged to pay settlement sums or judgments.  In addition, Dandee has suffered the other losses and harm that are pled more fully above.

122.    For the sake of equity, and as a matter of substantial justice in this matter, the Court should order each Third-Party Defendant to pay to make equitable contributions towards any liability that Dandee must defray under a settlement agreement or to satisfy a judgment.

WHEREFORE, Dandee seeks the redress for which it has prayed in its Prayer for Relief, which appears below.

### XIV.  PRAYER FOR RELIEF

Dandee now prays to this Court for the following relief in order to redress each of the legal wrongs that it has alleged above.

**First Cause of Action**:

1.    Proximate damages, according to proof.

2.    Pre-judgment interest.

3.    Costs of suit.

4.    Punitive and exemplary damages.

5.    Such other relief as the Court deems appropriate and just.

**Second Cause of Action**:

1.    Proximate damages, according to proof.

2.    Pre-judgment interest.

3.    Costs of suit.

4.    Such other relief as the Court deems appropriate and just.

//

1      **Third Cause of Action**:

2   1.   Proximate damages, according to proof.

3   2.   Pre-judgment interest.

4   3.   Costs of suit.

5   4.   Punitive and exemplary damages.

6   5.   Such other relief as the Court deems appropriate and just.

7      **Fourth Cause of Action**:

8   1.   Equitable indemnification, so far as the law allows, and including reasonable attorney's fees,

9      so far as the law allows.

10   2.   Pre-judgment interest.

11   3.   Costs of suit.

12   4.   Such other relief as the Court deems appropriate and just.

13      **Fifth Cause of Action**:

14   1.   Proximate damages, as authorized under 15 U.S.C. § 1117 (a).

15   2.   Statutory enhancement of proximate damages, as authorized under 15 U.S.C. § 1117 (a).

16   3.   Pre-judgment interest.

17   4.   Costs of suit.

18   5.   Such other relief as the Court deems appropriate and just.

19      **Sixth Cause of Action**:

20   1.   Proximate damages, as authorized under 15 U.S.C. § 1117 (a).

21   2.   Statutory enhancement of proximate damages, as authorized under 15 U.S.C. § 1117 (a).

22   3.   Pre-judgment interest.

23   4.   Costs of suit.

24   5.   Such other relief as the Court deems appropriate and just.

25      **Seventh Cause of Action**:

26   1.   Restitution, as authorized under California Business & Professions Code Restitution §§

27      17200 et seq.

28   2.   Pre-judgment interest.

THIRD-PARTY COMPLAINT OF DANDEE COMPANY, INC.           -25-

1    3.      Costs of suit.

2    4.      Such other relief as the Court deems appropriate and just.

3            **Eighth Cause of Action**:

4    1.      Equitable indemnification in accordance with the equities of the case.

5    2.      Pre-judgment interest.

6    3.      Costs of suit.

7    4.      Such other relief as the Court deems appropriate and just.

8            **Ninth Cause of Action**:

9    1.      Equitable contribution in accordance with the equities of the case.

10   2.      Pre-judgment interest.

11   3.      Costs of suit.

12   4.      Such other relief as the Court deems appropriate and just.

13                    **XV.  DEMAND OF JURY TRIAL**

14           So far as the law allows, Dandee demands that a jury of its peers try its claims against Third-

15   Party Defendants.

16                                         Respectfully submitted,

17                                         /s/  William Markham
     Dated:  January 23, 2013
18                                         _____
                                           William Markham,
19                                         LAW OFFICES OF WILLIAM MARKHAM, P.C.
                                           Attorney for Defendant/Third-Party Plaintiff Dan-Dee
20                                         Company, Inc.