IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INNOVATION VENTURES, LLC, et al.,

    Plaintiffs,

v.

PITTSBURG WHOLESALE GROCERS, INC., et al.,

    Defendants.

No. C 12-05523 WHA

**ORDER RE MOTION TO FREEZE ASSETS**

## INTRODUCTION

In this counterfeit-goods trademark action, plaintiffs move to freeze assets. The issue is the extent to which an alleged counterfeit-product seller should be subjected to a freeze of assets as a source of recovery in the event the allegations are eventually proven. For the reasons explained below, some relief is warranted.

## STATEMENT

Plaintiff Innovation Ventures, LLC exclusively licenses the "5-hour Energy" trademark, copyright, and trade dress. Plaintiff Living Essentials, LLC is a wholly-owned subsidiary of Innovation Ventures and distributes the 5-hour Energy product. Of the many defendants named herein, this motion concerns only Dan-Dee Company, Inc. and one of its principals, Kevin Attiq. The main issue is whether plaintiffs have shown that freezing assets of Dan-Dee and Kevin Attiq is necessary and warranted to ensure that assets will be available to provide final equitable relief.

There is considerable proof and this order finds, for purposes of this motion, that there was a nationwide counterfeiting "cabal" involving four million bottles of fake 5-hour Energy (Br. 1, 14). Dan-Dee bought the counterfeit product from a company named as a third-party defendant in a separate action and whom plaintiffs call a "co-conspirator" — Midwest Wholesale Distributors, Inc. — and sold it to resellers and stores throughout the country (*id.* at 5–6). The full extent to which Dan-Dee and Kevin Attiq were knowing participants remains undecided, but in a November 2012 hearing, this Court kept a preliminary injunction in place against Dan-Dee and Kevin Attiq upon finding that they acted knowingly (Dkt. No. 122 at 57).

Three instances in our procedural history show that defendants Dan-Dee and Kevin Attiq have a pattern of violating court orders herein. *First*, Kevin Attiq and Dan-Dee tried to evade a seizure order when an employee was ordered to remove what was suspected to be counterfeit 5-hour Energy from Dan-Dee's premises on the day the seizure took place (K. Attiq Decl. ¶¶ 25–27). *Second*, Dan-Dee and Kevin Attiq violated an October 2012 temporary restraining order by arranging to complete a large sale of 5-hour Energy to fill an order placed before the TRO took effect (Br. 10). *Third*, Dan-Dee and Kevin Attiq admit to violating the preliminary injunction to which they stipulated with plaintiffs by keeping images of 5-hour Energy on the Dan-Dee website.

In March 2013, plaintiffs requested that defendant Dan-Dee put $250,000 in an escrow account to ensure the availability of funds to recover profits from the sale of counterfeit product. Defendant declined (Reply Br. 5).

Plaintiffs now move under the Lanham Act to freeze the assets of Dan-Dee and Kevin Attiq in the amount of Dan-Dee's profits from the sale of counterfeit 5-hour Energy. Both sides agree, for the purposes of this motion, that this amount would be $856,453. This total represents the difference between the revenue defendant Dan-Dee received from sales of counterfeit 5-hour Energy ($3,977,348) and the cost of buying that product from Midwest ($3,120,895) (*id.* at 14–15).

Defendants Dan-Dee and Kevin Attiq request that judicial notice be taken of several filings in a civil action by plaintiffs in the Eastern District of New York entitled *Innovation*

2

*Ventures, LLC v. Ultimate One Distributing Corp.*, 12-CV-05354-KAM-RLM. As this order does not rely on these documents, the request for judicial notice is **DENIED AS MOOT**.

## ANALYSIS

The district court has the authority to freeze assets pursuant to its "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). "Because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant]'s profits as a form of final equitable relief, the district court [has] the inherent power to freeze [defendant]'s assets in order to ensure the availability of the final relief." *Ibid.* A "party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). And, of course, a likelihood of success on the merits must be shown.

Plaintiffs supply a deposition of Walid Jamil, a principal of "co-conspirator" Midwest as a basis to allege that Dan-Dee and Kevin Attiq were knowing participants in the counterfeiting operation. Dan-Dee, Midwest, and Tradeway International, Inc. d/b/a Baja Exporting (another entity that plaintiffs call a "co-conspirator" and which Dan-Dee has sued as a third-party defendant in the larger counterfeiting scheme) split the profits three ways (Potter Decl. Exh. 6 at 90–93). Jamil's knowledge of Dan-Dee and Kevin Attiq's involvement, however, is based on second-hand knowledge from his conversations with Joseph Shayota, a principal of Baja.

Plaintiffs further argue that Dan-Dee and Kevin Attiq are likely to hide assets because they have shown a willingness to mislead plaintiffs and the Court. Since the beginning of this action, Dan-Dee and Kevin Attiq have violated the seizure order, temporary restraining order, and stipulated preliminary injunction, showing a "brazen disregard" for judicial authority (Br. 14).

In opposition, Dan-Dee and Kevin Attiq insist the company is a "hardscrabble wholesaler, not a criminal counterfeiter" (Opp. 17). The company employs seventeen people and has a good business record (K. Attiq Decl. ¶¶ 5–6; F. Attiq. Decl. ¶¶ 5–6). Dan-Dee maintains all of its financial resources and business enterprises in the United States, and

1  Dan-Dee's officers, including Kevin Attiq, have strong connections to the community (Br. 21;
2  K. Attiq Decl. ¶ 2; F. Attiq Decl. ¶¶ 2, 11).  No showing of prior counterfeiting by Dan-Dee
3  or Kevin Attiq has been made.  According to them, the discount at which Dan-Dee bought
4  the 5-hour product seemed "good, but not too good to be true" (K. Attiq Decl. ¶ 12).
5  Although plaintiffs have shown a clear case of counterfeiting, it is less clear that they will
6  prevail against Dan-Dee on a theory of a knowing wrong.  Even so, plaintiffs have shown a
7  probability of success in that regard.

8       This order finds, however, that plaintiffs have failed to demonstrate a "strong likelihood
9  of dissipation" of assets.  *See Johnson,* 572 F.3d at 1085.  As plaintiffs' counsel noted in the
10 July 11 hearing, although it is not necessary to show that defendants are planning to dissipate
11 assets in order to find a "strong likelihood" of dissipation, district courts in our circuit have
12 often pointed to evidence that suggests defendants are in the process of dissipating assets, or
13 are strategizing to do so in the future, when deciding whether to freeze assets.  For example,
14 our court of appeals affirmed when a district court "expressly" found that it "was not only
15 possible, but probable" that defendant would dissipate assets based on her past history of
16 fraudulent intra-family transfers, concealment of assets in defiance of a court order, and a
17 conveniently timed divorce settlement.  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
18 321 F.3d 878, 881 (9th Cir. 2003).

19      Courts in our circuit have also looked to whether defendants have a particular capability
20 or convenience in secreting assets.  In *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp.
21 1521, 1527 (S.D. Cal. 1989), the court was persuaded by the "international aspect of the
22 defendants' business."  Our court of appeals affirmed.  *Reebok*, 970 F.2d at 563.  In another
23 instance, our court of appeals upheld an asset freeze where defendants had a "history of spiriting
24 their commissions away to a Cook Island trust."  *FTC v. Affordable Media, LLC*, 179 F.3d 1228,
25 1236–37 (9th. Cir. 1999).  In *Johnson*, the district court found an asset freeze necessary where a
26 company's chief executive officer had diverted 35 million dollars into his own personal account.
27 Our court of appeals affirmed that his past financial misconduct showed that he was "more than
28

4

capable of placing assets in his personal possession beyond the reach of judgement." 572 F.3d at 1085.

Plaintiffs have not yet demonstrated that defendants Dan-Dee and Kevin Attiq have already been, or are attempting to, hide assets. While plaintiffs submit evidence bearing on likelihood of success on the merits, plaintiffs fall short in showing that defendants Dee-Dee or Kevin Attiq would be particularly likely to, or capable of, dissipating assets. Plaintiffs do not dispute Dan-Dee's assertion that it "maintains all of its business operations and assets only in the United States" (Opp. 21). This is in contrast to its alleged co-conspirator, Baja, which transferred two million dollars to a Mexican affiliate three days after the execution of the seizure order (Br. 15). Plaintiffs point to no financial movements or lifestyle changes that suggest Dan-Dee or Kevin Attiq is scheming to hide assets. This is again in contrast to another alleged co-conspirator, Midwest, whose chief financial officer's wife transferred $400,000 to her brother days after the seizure took place (*ibid.*). Plaintiffs show no parallel risk with respect to Dan-Dee or Kevin Attiq.

As with any provisional relief motion, this order must consider the balance of hardships. Dan-Dee must make daily purchases and sales of products, pay employees, and manage operating expenses, for which it must have access to cash and credit (K. Attiq Decl. ¶ 10; F. Attiq Decl. ¶ 10). This order finds that a hard freeze on assets would be an unwarranted burden on this business.

The drastic relief sought is not warranted on this record, but given the suspicious conduct undertaken by Dan-Dee and Kevin Attiq, some limited relief is warranted as follows, effective immediately:

    1.    Defendants Dan-Dee and Kevin Attiq are enjoined from paying dividends, distributions, or bonuses to any employee, owner, officer, parent, affiliate, or related person without prior court approval until the resolution of this action.

5

2. Dan-Dee and Kevin Attiq are enjoined from paying or incurring salaries for any calendar month totally more than salaries paid in total for the month of June 2013.

3. Dan-Dee and Kevin Attiq are enjoined from paying or incurring for any calendar month more for total costs of operation than was paid for such costs during the month of June 2013.

4. Dan-Dee and Kevin Attiq shall submit to plaintiffs' counsel by the fifteenth day of each month, commencing on August 15, 2013, a sworn declaration for the previous month listing all salaries, other expenditures, and all money out as well as all money in. This can be done by convenient categories, such as salaries and wages, distributions (which should be zero but must be listed), loan payments, rent, and cost of goods. The bank account(s) balance(s) as of the end of the last month shall be listed, with balance(s) identified specifically for each bank account. On August 15, Dan-Dee and Kevin Attiq should also supply the same information for June 2013 (to be used as a baseline for comparison). All entries must be correct and defendants must keep sufficient records to demonstrate the accuracy of the entries. The monthly accounting must be for the overall business, not just for the product in question.

5. Dan-Dee and Kevin Attiq are enjoined from opening any other accounts and must continue to use the normal Dan-Dee and Kevin Attiq accounts.

## CONCLUSION

Relief is granted to the extent above and is otherwise denied. If Dan-Dee or Kevin Attiq violates the foregoing, more drastic relief may then be considered.

**IT IS SO ORDERED.**

Dated: July 12, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6