**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INNOVATION VENTURES, LLC, et al.,

        Plaintiffs,

    v.

PITTSBURG WHOLESALE GROCERS,
INC., et al.,

        Defendants.

                      /

No. C 12-05523 WHA

**ORDER GRANTING MOTION
FOR JUDGMENT ON THE
PLEADINGS ON DAN-DEE'S
FIRST, SECOND, AND THIRD
AFFIRMATIVE DEFENSES**

**INTRODUCTION**

    In this counterfeit-goods trademark action, plaintiffs move for judgment on the pleadings on three affirmative defenses. For the reasons explained below, the motion is **GRANTED**.

**STATEMENT**

    Plaintiff International IP Holdings, LLC owns the 5-hour Energy trademark, copyright, and trade dress. Plaintiff Innovation Ventures, LLC exclusively licenses the 5-hour Energy trademark, copyright, and trade dress. Plaintiff Living Essentials, LLC, a subsidiary of Innovation Ventures, distributes 5-hour Energy. Plaintiffs (collectively, "Innovation Ventures") allege that the defendants in this action have been involved in a scheme to manufacture and sell counterfeit 5-hour Energy drinks. Defendants Dan-Dee Company, Inc., and its owners Fadi Attiq and Kevin Attiq (collectively "Dan-Dee"), are among the many wholesale grocers and distributors allegedly involved.

Regarding the extent of Dan-Dee's involvement in the counterfeiting, a prior order found (Dkt. No. 417 at 2 (citations omitted)):

> There is considerable proof and this order finds, for purposes of this motion, that there was a nationwide counterfeiting "cabal" involving four million bottles of fake 5-hour Energy. Dan-Dee bought the counterfeit product from a company named as a third-party defendant in a separate action and whom plaintiffs call a "co-conspirator" — Midwest Wholesale Distributors, Inc. — and sold it to resellers and stores throughout the country. The full extent to which Dan-Dee and Kevin Attiq were knowing participants remains undecided, but in a November 2012 hearing, this Court kept a preliminary injunction in place against Dan-Dee and Kevin Attiq upon finding that they acted knowingly.

The trademarks that Innovation Ventures seeks to protect in this action are various versions of the product's name "5-hour energy," some of which involve colors and landscape images, as well as a silhouette symbol of a running man. The trade dress Innovation Ventures seeks to protect is basically the colorful packaging used on its bottles of the 5-hour energy product (Second Amd. Compl. ¶¶ 45, 50–51). In its answer, Dan-Dee admits that these trademarks and trade dress have acquired secondary meaning (Dkt. No. 243 ¶ 53).

Innovation Ventures now moves for judgment on the pleadings under Rule 12(c) on Dan-Dee's first, second, and third affirmative defenses. Dan-Dee's first affirmative defense of unclean hands asserts that Innovation Ventures' trade marks and trade dress are unenforceable because they mislead the public into believing that the 5-hour energy products are "healthful" and provide an energy boost from a mix of vitamin B and amino acids. Dan-Dee's second and third affirmative defenses assert that Innovation Ventures's trade marks and trade dress are unenforceable because Innovation Ventures knowingly pursued these allegedly misleading trademarks and trade dress before the United States Patent and Trademark Office, and therefore obtained their registration by fraud (Dkt. No. 243 at 17–20).

This order follows full briefing and oral argument.

**ANALYSIS**

Our court of appeals has held:

> Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Analysis under Rule 12(c) is

2

United States District Court

For the Northern District of California

> substantially identical to analysis under Rule 12(b)(6) because,
> under both rules, a court must determine whether the facts alleged
> in the complaint, taken as true, entitle the plaintiff to a legal
> remedy.

*Chavez v. United States*, 683 F.3d 1102, 1108–09 (9th Cir. 2012) (quotations omitted).

### 1. UNCLEAN HANDS.

"Unclean hands is a defense to a Lanham Act infringement suit. To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987). Dan-Dee argues that Innovation Ventures' trade marks and trade dress deceive the public and are therefore unenforceable. This order disagrees.

In support of its unclean hands argument, Dan-Dee harkens back to a Supreme Court decision written 110 years ago: *Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516 (1903). In *Worden*, the manufacturer of a successful laxative called "Syrup of Figs" sued a competitor producing imitation products labeled "Syrup of Figs" and "Fig Syrup." The plaintiff's products were trademarked and labeled as follows:

> On the sides of each bottle are blown the words 'Syrup of Figs,'
> and on the back the words 'California Fig Syrup Co., San
> Francisco, Cal.' On the face of every package is a picture of a
> branch of a fig tree with the hanging fruit, surrounded with the
> words 'California Fig Syrup, San Francisco, Cal.;' and beneath this
> the words 'Syrup of Figs presents in the most elegant form the
> laxative and nutritious juice of the figs of California.'

*Id*. at 533–34. The plaintiff's trademark and trade dress in *Worden* were entirely directed at communicating the presence of fig juice as the active ingredient to the consumer. The product, however, contained only a token squirt of fig juice in each bottle that had no laxative effect. Instead, the active ingredient was made from a type of senna plant. The Supreme Court held:

> [I]f the plaintiff makes any *material* false statement in connection
> with the property which he seeks to protect, he loses his right to
> claim the assistance of a court of equity; that where any symbol or
> label claimed as a trade-mark is so constructed or worded as to
> make or contain a distinct assertion which is false . . . the right to
> exclusive use of it cannot be maintained.

> . . . .

> The [plaintiff] by the use of the terms of its so-called trade-mark
> on its bottles, wrappers, and cartons continued to appeal to the

1  consumers, out of whose credulity came the profits of their
2  business.  And, indeed, it was the imitation by the defendants of
   such false and misleading representations that led to the present
3  suit.

   . . . .
4
5  [T]he name 'Syrup of Figs' does not, in fact, properly designate or
   describe the preparation made and sold by the California Fig Syrup
6  Company, so as to be susceptible of appropriation as a trade-mark,
   and that the marks and names, used upon the bottles containing
7  complainant's preparation, and upon the cartons and wrappers
   containing the bottles, are so plainly deceptive as to deprive the
8  complainant company of a right to a remedy by way of an
   injunction by a court of equity.

9  *Id.* at 528, 538–40 (emphasis added).

10      Our court of appeals has occasionally cited *Worden* for the proposition that "a court

11  should not protect the exclusive right to use a name or mark which is misleading to the public."

12  *See, e.g.*, *Fuddruckers*, 826 F.2d at 847.  The Supreme Court long ago cautioned, however:

13      Of course a man is not to be protected in the use of a device the
        very purpose and effect of which is to swindle the public.  But the
14      defects of a plaintiff do not offer a very broad ground for allowing
        another to swindle him.  The defence relied on here should be
15      scrutinized with a critical eye.

16  *Coca-Cola Co. v. Koke Co. Of Am.*, 254 U.S. 143, 145 (1920).  Here, Dan-Dee's unclean hands

17  defense withers under scrutiny.

18      *First*, regarding the specific trademarks asserted (as opposed to the trade dress), Dan-

19  Dee's allegation that Innovation Ventures' trademarks are deceptive is not plausible.  In this

20  action, Innovation Ventures is asserting various versions of the "5-hour energy" name and the

21  "running man" logo.  The "5-hour energy" product supposedly provides energy for

22  approximately five hours due to its caffeine content and this supposition is not challenged by

23  Dan-Dee.  Nor does Dan-Dee contend that the running man image is somehow inherently

24  misleading.

25      *Second*, Dan-Dee's allegation that the trade dress is deceptive is also implausible.  This is

26  so whether the trade dress is analyzed alone or in combination with the asserted trademarks.

27  Dan-Dee contends that the trade dress purports to provide the consumer with "Hours of Energy

28  Now — No Crash Later" because it includes "B vitamins" and amino acids as "active

ingredients." This description of the trade dress is inaccurate. Nowhere do the labels state that the *active ingredients* are "B vitamins" and "amino acids." Rather, the label simply lists three characteristics of the product: (1) "B vitamins, (2) amino acids, (3) and "zero sugar" or "sugar free." There is no dispute that the product actually has these ingredients and characteristics.

Reading between the lines, Dan-Dee's position is that despite the absence of a materially false or misleading statement on the packaging, a hapless consumer might nevertheless infer that the B vitamins and amino acids provide the consumer with five hours of energy. Assuming without deciding that this is true, the defense still fails. The so-called *Worden* defense requires a material false statement or that the packaging be "worded as to make or contain a *distinct assertion* which is false." *Worden*, 187 U.S. at 528 (emphasis added). The 5-hour product trade dress carries no distinct assertion that is false or misleading.

*Third*, Dan-Dee argues that the alleged deception is "reinforced" by Innovation Ventures' advertising. This contention fails because Innovation Ventures is not asserting claims in this action based on infringement of its advertising. This allegedly unclean advertising conduct does not relate to the subject matter of Innovation Ventures' claims.

This order expresses no opinion on whether elements of Innovation Ventures' advertisements (apart from the trademarks and trade dress) might be misleading such that they would give rise to an independent cause of action under a consumer protection or false advertising statute. The point is that Dan-Dee's unclean hands defense is not plausible as to the trademarks and trade dress asserted by Innovation Ventures in this suit.

During oral argument, counsel for Dan-Dee asserted that the policy undergirding the *Worden* doctrine encourages honesty in the marketplace in order to protect less-educated consumers, and that Dan-Dee therefore should be permitted to develop a record for summary judgment and trial. Plaintiffs responded that it is strange that this policy would be enforced by a counterfeiter who is participating in the alleged fraud (though this was the fact pattern in *Worden* itself). There is another consideration present in modern litigation that was not considered in *Worden*, however: the burdens of discovery. The broad interpretation of *Worden* urged by Dan-Dee would allow any counterfeiter to assert a need for discovery into a plaintiff's trade secrets in

United States District Court

For the Northern District of California

1   order to support a highly-speculative fraud claim.  This order holds that the *Worden* doctrine

2   cannot be stretched that far.

3        The motion for judgment on the pleadings on this affirmative defense is accordingly

4   **GRANTED**.

5        **2.      FRAUD ON THE PTO.**

6        Dan-Dee's second and third affirmative defenses for fraud on the PTO are predicated on

7   its argument that Innovation Ventures' trade marks and trade dress are inherently and wholly

8   deceptive.  To this extent, the affirmative defenses fail for the reasons explained above.  Dan-

9   Dee concentrated all of its fire in its opposition brief on the first affirmative defense and did not

10  respond to plaintiffs' arguments that the second and third affirmative defenses should be

11  dismissed.  Thus, there is no occasion to consider whether they could have any life on their own.

12  The motion for judgment on the pleadings as to these affirmative defenses is likewise **GRANTED**.

13                              **CONCLUSION**

14       Innovation Ventures' motion for judgment on the pleadings on Dan-Dee's first, second,

15  and third affirmative defenses is **GRANTED**.

16

17       **IT IS SO ORDERED.**

18

19  Dated:   August 23, 2013.

20                              WILLIAM ALSUP
                                UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

6